### COUNTY OF CALEDONIA,

### MARCH TERM, 1845.

[Continued from Vol. 17, page 578.]

### PRESENT,

Hon. STEPHEN ROYCE,
Hon. ISAAC F. REDFIELD, } ASSISTANT JUDGES.
Hon. WILLIAM HEBARD,

---

### JOHN HYNDMAN *v.* JOHN HYNDMAN.

#### IN CHANCERY.

Every case should be *fully heard* in the court of chancery;—but the chancellor may, in his discretion, make a decree *pro forma*, with a view of saving needless expense to the parties, in case the supreme court should be of opinion the orator cannot prevail.*

A contract between a mortgagee and mortgagor, in reference to the purchase by the mortgagee of the equity of redemption, will not be positively disregarded in a court of equity; but such contracts are viewed suspiciously, and the conduct of the mortgagee will be watched very narrowly.

In this case the orator, being indebted to the defendant, executed to him an absolute deed of his farm, taking back a writing of defeasance. The orator

---

*See *Stafford* v. *Ballou et al.*, 17 Vt. 329.

2

Hyndman *v.* Hyndman.

received from the defendant farther advances, until the sum due amounted to about $600. The parties then agreed, that the defendant should have the farm for $800; and the defendant gave his note to the orator for the difference between that sum and the amount due upon the mortgage, and the orator surrendered his writing of defeasance ;—but it was agreed verbally between them, that the defendant should sell the farm and the orator should have what he received over $800, after paying defendant for his time and trouble. And it was held, that the contract must, in equity, be still considered as a mortgage, with a power of sale in the mortgagee, and that the orator should be allowed to redeem the premises upon a bill brought for that purpose.

And the orator was allowed to redeem, notwithstanding the defendant had, in pursuance of his power of sale, caused the premises to be sold at auction and became *himself* the purchaser.

APPEAL from the court of chancery. The facts, as they appeared from the bill and answer and the testimony taken, were substantially as follows.

In 1832 the orator, being indebted to the defendant and William Hyndman, executed to them an absolute deed of his farm in Barnet and received back a writing of defeasance. The orator received farther advances from time to time, until 1836, when the parties reckoned together the amount due and found it to be $608,69, and then agreed, that the defendant and William Hyndman should have the farm, free from the orator's equity of redemption, at eight hundred dollars; and the defendant accordingly surrendered to the orator the notes due from him and executed to the orator a note for $191,31, and the orator surrendered his writing of defeasance ;—but it was at the same time verbally agreed between them, that the defendant should sell the farm and the orator should have what was received therefor, above the sum of eight hundred dollars, after paying the defendant for his time and trouble in the business. The orator continued to reside on the premises until the commencement of this suit; and the defendant, subsequent to 1836, leased the premises from year to year to different persons and received the rent, until March 30, 1840, when the parties executed an indenture, in which it was recited, that the defendant and William Hyndman had paid to the orator $869,80, as of the date of March 11, 1840, in consideration of which they held a warrantee deed of the premises in question; and it was agreed, that the orator should have the use

of the farm for one year for the rent of $78,09,—that if he paid the rent and the sum of $869,80 before March 11, 1841, he should have a deed of the farm,—but that, if he did not make payment, the defendant should sell the farm at auction on the first day of April, 1841, and should pay to the orator what was received for the farm, above those sums, after paying defendant for his time and trouble. The defendant caused the farm to be sold at auction in 1841 and became the purchaser himself at $1001,00, and offered to pay to the orator the surplus above the sums specified in the indenture; but the orator would not receive it. Testimony was given tending to prove that the orator was poor, and that the farm was worth $1100, or $1200. William Hyndman conveyed his interest in the premises to the defendant before the commencement of this suit.

The orator prayed, that an account might be taken of the amount justly due to the defendant, and of the rents and profits of the premises received by the defendant, and that the orator might be permitted to redeem the premises.

The court of chancery,—REDFIELD, Ch.,—dismissed the bill with cost;—from which decree the orator appealed.

*A. Underwood*, for orator, contended, that the transaction between the parties created originally a mortgage upon the premises, and that the relation between them was in no respect subsequently altered, except that the defendant, by the arrangement entered into in 1836, acquired a power to sell; and cited *Baxter* v. *Willey*, 9 Vt. 276; 4 Kent 137, 142, 143; 7 Cranch 237, 482; *Hughes* v. *Edwards*, 9 Wheat. 489; 7 Johns. 40; 2 Fonbl. Eq. 260; *Campbell* v. *Worthington*, 6 Vt. 448; *Kelleran* v. *Brown*, 4 Mass. 443; *Cutler* v. *Dickinson*, 8 Pick. 386; *Flagg* v. *Mann*, 14 Pick. 467; *Eaton* v. *Green*, 22 Pick. 526; *Wright* v. *Bates*, 13 Vt. 341; 2 Atk. 98, 388; *Fry* v. *Porter*, 1 Chanc. Cas. 141; *James* v. *Odes*, 2 Vern. 84, 402; *Seaton* v. *Slade*, 7 Ves. 273; Pow. on Mort. 116; *King* v. *Edington*, 1 East. 288; *Eaton* v. *Whiting*, 3 Pick. 484; 1 Vern. 192.

*W. Mattocks*, for defendant, claimed, that the transaction between the parties in 1836 was a purchase, at a fair bargain, and for a valuable consideration, of the orator's equity of redemption, and that the

lease executed in 1840 was not in the nature of a mortgage, but was merely a conditional sale; and cited 4 Kent 143, 144; 2 Eq. Dig. 266, 267; 4 Ib. 386; Fonbl. Eq. 530, n. 263.

The opinion of the court was delivered by

REDFIELD, J. This is an appeal from a decree made by the chancellor of this circuit. When the case was heard in the court of chancery, it appeared to me to be one of so much doubt, that I did not feel justified in exposing the parties to the expense of taking an account of so long standing, until the necessity for such expense was fully established by the decision of this court. In that view I understand my brethren fully to concur. We by no means justify the practice, sometimes adopted in the court of chancery, of allowing appeals upon merely *formal* decrees, *without hearing.* Such a course is only calculated to increase the number of chancery appeals in this court and delay the final disposition of many of them, without any adequate saving. Every case should be *fully heard* in the court of chancery; and then, no doubt, the chancellor may, in his discretion, make a decree with a view of saving needless expense to the parties, in case the supreme court should be of opinion the orator cannot prevail.

But upon a full hearing of this case, upon very satisfactory arguments upon both sides, we incline to the opinion, that the orator ought to be permitted to redeem. Cases of this kind will always depend very much upon the determination of the facts. In that particular, one case is not a rule for the determination of any other case, (unless the two cases are alike in all particulars,—which never occurs,) and therefore need not be reported, so far as the facts are concerned.

The points of law here decided are, that when the orator contracted to sell out his equity of redemption to his mortgagee, he is, in this court, entitled to very favorable consideration, on account of the unequal relations in which the parties stood at the time. The one was the superior and the other the dependent. The one had power and resources; the other had neither, but was sore pressed by necessity. In addition to this, the defendant was clearly the mortgagee of the premises for such a sum, as it was not in the power of the orator readily to raise. The price was little more than two-

thirds the value of the premises.  It was agreed, that the defendant should sell the premises, and, if they brought more than the price paid by the defendant, the plaintiff should have the surplus.  Under these circumstances we think the contract must, in equity, still be considered a mortgage, with a power of sale in the mortgagee.  It is well settled, that, in all transactions between the mortgagor and mortgagee, the conduct of the mortgagee will be watched very narrowly;  4 Kent 143, and note, and cases there cited.  This is the language of all the cases, and of all the books, in regard to all purchases, made by trustees, of the interest of the *cestui que trust.*  Such contracts are not positively disregarded in a court of equity; but they are viewed suspiciously and criticised with some degree of severity.

The only other ground, upon which the defendant claims to hold the estate free from the plaintiff's equity of redemption, is, that, in pursuance of the power of sale, he caused the estate to be sold at auction *and became himself the purchaser.*  Such sales have always, in the English chancery, and in this country, unless when the matter is controlled by statute, been held voidable, at the election of the mortgagor, or *cestui que trust,* unless he delay for an unreasonable time to make his election,—in which case he will be held to have confirmed the sale by his acquiescence.  The cases are too numerous upon this point, and there is too little conflict in the decisions, to require an elaborate review of the subject.

The State of New York, by *statute,* allows the mortgagee, in such cases, to become the purchaser, if he conduct the matter with perfect fairness.  In that State, therefore, the decisions upon this subject rest upon a somewhat different basis from the English cases.  In the former the sale is *prima facie* good, and it is therefore incumbent upon the *cestui que trust* to *impeach* its fairness; but in the latter the sale is, always, either good, or bad, at the election of the *cestui que trust,*—as in the case of a contract of sale between an infant and an adult.  The authorities will be found sufficiently referred to and digested in *Davoue* v. *Fanning,* 2 Johns. Ch. R. 252, and in Mr. Sumner's note to *Whichcote* v. *Lawrence,* 5 Ves. 740.  *Bergen* v. *Bennett,* 1 Caine 1, is somewhat of an elaborate case upon this point.

The decree of the chancellor is therefore reversed and the cause remanded to the court of chancery to be there proceeded with.