## JOHN H. BOSTWICK *vs.* THOMAS A. STILES.

A foreclosure was to take effect August 5th. The debt was $3,723, and the property, which was nearly all the mortgagor had, was worth between $8,000 and $9,000. An uncle of the mortgagor, who had ample means, had promised the mortgagor to furnish the money on the 3d of August, and the latter had relied on receiving it, but, unexpectedly to the mortgagor, he failed to furnish it. On the evening of the 5th, the mortgagor procured a person who had the necessary amount in United States bonds, but not in money, to go to the

mortgagee and see if he would take them for the debt. This person called at the house of the mortgagee the same evening, and finding that he had gone to bed sent him word by his wife that he had come to redeem the mortgaged property, to which she brought back a reply that he was sick, and nothing further was done. Held, on a petition brought by the mortgagor, to open the foreclosure and to be allowed to redeem, that the relief ought to be granted.

BILL IN EQUITY, for the opening of a foreclosure and the redemption of the property mortgaged. The following facts were found by a committee to whom the case was referred.

The petitioner has very little other property besides the mortgaged premises; their value is from $8,000 to $9,000; and the mortgage debt is $3,723.50. The time limited for redemption by the decree of foreclosure was August 5th, 1867. The petitioner intended not to allow the time to expire without meeting the payment; but having no means of his own sufficient for that purpose, he made an arrangement with his uncle, George Coffing, a gentleman of property, to furnish the necessary funds, and under that arrangement the petitioner had good reason to suppose that the money would be furnished on Saturday the 3d of August, but for reasons not fully explained he was wholly disappointed in procuring the needed funds from that source, and delayed making other arrangements until the evening of August 5th. He then applied for assistance to John H. Russell. Mr. Russell had United States 5-20 bonds sufficient to meet the payment, but had not the money; and at the petitioner's request he agreed to meet the payment with bonds if they would be satisfactory to Mr. Stiles. Mr. Russell accordingly, at between 9 and 10 o'clock in the evening of August 5th, called at Mr. Stiles' house. Mr. Stiles had gone to bed. Mr. Russell stated to Mr. Stiles' wife his business and the importance of it, and told her that he had come prepared to redeem the mortgaged premises for Mr. Bostwick. Mr. Stiles did not get up to see Mr. Russell, and Mrs. Stiles brought answer from him that he was sick, and Mr. Russell came away without seeing him.

Since that time the parties have talked with each other on the subject of redeeming the place. Mr. Bostwick has expressed his desire to redeem and his readiness to provide

means if Mr. Stiles would agree to accept them and name a time for doing the business. Mr. Stiles said all he wanted was his money and interest, but no definite arrangement has been made nor any time fixed, nor has the money been tendered. These conversations were mostly after the petition to open the foreclosure was brought.

The case was reserved by the Superior Court on these facts for the advice of this court.

*E. W. Seymour* and *M. J. Warner*, for the petitioner.

One of the principal offices of equity is to relieve parties prevented by accident or mistake from fulfilling obligations and duties created by law ; petitions for relief against such obligations being regarded with much higher favor than where the obligations are assumed by the party of his own choice. 1 Story Eq. Jur., §§ 101, 109. It is a well established rule that the court for sufficient reasons will open a foreclosure and extend the time for redemption. *Doty* vs. *Whittelsey*, 1 Root, 310 ; *Crane* vs. *Hanks*, id., 468 ; *Bridgeport Savings Bank* vs. *Eldredge*, 28 Conn., 556 ; 1 Story Eq. Jur., §§ 28, 899 and note 2, 439 ; 2 id., §§ 1013, 1014 and notes 3 and 4, 1313, 1314, 1315 and note 2, 1316. The facts in this case show the strongest reasons for interference. It is a case which illustrates one of the purposes for which courts of equity were created, namely, to relieve against mistakes and accidents and to protect one party from an unconscionable advantage which another seeks to take of him. The case is much stronger than that of *Weiss* vs. *Alling*, 34 Conn., 60, where relief was granted. No wilfullness, nor contempt of the decree of the court, nor gross negligence on the part of the petitioner is found. It is the fault of the respondent that he has not received every cent that is due him. It has been fairly offered him. The situation of the parties and of the property is unchanged. There has been no sale nor expenditure of money because of the passing of the decree.

*G. C. Woodruff* and *Peet*, for the respondent.

Upon the expiration of the time limited by a decree for re-

demption, if the debt is not paid the estate of the mortgagee is absolute at law and in equity. The foreclosure will be opened only : 1st. When an equity arises out of the *conduct of the mortgagee.* 2 Swift's Dig., 190 ; *Lloyd* vs. *Mansell,* 2 P. Wms., 73 ; *Hinman* vs. *Bacon,* 2 Conn., 153 ; *Weiss* vs. *Alling,* 34 id., 60. 2d. When it arises from the *act of God* or inevitable accident. But never, when the mortgagor through *negligence* or his *own fault* omitted to pay by the time. The excess of the value of the property over the debt is not a sufficient reason. Nor parol declarations of willingness on the part of the mortgagee to take his debt. *Smalley* vs. *Hickok,* 12 Verm., 163 ; *Whishall* vs. *Short,* 2 Eq. Cas. Ab., 177 ; S. C., 1 Brown Parl. Cas., 414. Nor any disappointment in raising the money. Nor any tender of collaterals. Nor tender of money after business hours. Nor any *neglect* on the part of the mortgagor. *Bridgeport Savings Bank* vs. *Eldredge,* 28 Conn., 563 ; *Weiss* vs. *Alling,* 34 id., 64. In the present case, neither the conduct of the mortgagee, nor the act of God, nor inevitable accident, entitles the mortgagor to the opening of the decree. It is a case of sheer negligence on his part.

PARK, J. We have had this case under advisement for a considerable length of time, and have thoroughly considered the several questions involved, and on the whole we have come to the conclusion that the court ought to interfere in behalf of the petitioner, and allow him another opportunity to redeem the premises.

It is the peculiar province of a court of equity to grant relief in cases of fraud, accident, or mistake, where there has been no fault on the part of the party seeking relief. *Bridgeport Savings Bank* vs. *Eldredge,* 28 Conn., 556 ; 1 Story Eq. Jur., sec. 439. The equitable definition of the term accident includes not only inevitable casualties, and such as are caused by the act of God, but also those that arise from unforeseen occurrences, misfortunes, losses, and acts or omissions of other persons, without the fault, negligence, or misconduct of the party. 1 Story Eq. Jur., sec. 78. Relief on the ground

of accident is limited to obligations imposed by law, and does not apply to contracts voluntarily entered into by the parties. In relation to the latter, no relief can be granted for their non-fulfillment on the ground of accident, for the risk was voluntarily assumed. 1 Story Eq. Jur., sec. 101.

It is found as a fact in the case, that the petitioner intended and expected to redeem the premises, and never entertained the thought of allowing the time limited by the court for redemption to expire without meeting the payment. But he had but little property besides the mortgaged premises, and had to resort to his friends to assist him to the necessary funds for the purpose. The amount to be raised was a large sum for a man in his pecuniary circumstances, and, considering the great disparity between the mortgage debt and the value of the mortgaged property, it would be strange indeed if he neglected to exercise the utmost diligence to make sure of the necessary funds in time for the payment. He had more than eight thousand dollars worth of property mortgaged for a sum less than four thousand, and that property was nearly all he owned.

Negligence under such circumstances would seem to be almost impossible. He knew that he must comply with the decree of the court or lose his property, and we should expect that he would not rest either day or night till he had secured the necessary funds to be forthcoming at the time appointed.

The case finds in effect that this was true. He applied to his uncle, a gentleman of ample property, for the necessary amount, and was promised that he should have it on Saturday, the third day of August. The time limited for redemption expired on Monday, the fifth day of August. The case finds that the petitioner had good reasons to suppose that the money would be furnished in accordance with the agreement; but for some reason, not fully explained, he was wholly disappointed. It was said in the argument that the uncle was unexpectedly detained on his way home from a journey, and did not arrive in season.

But however this may be, the question is, whether these facts are sufficient to show that the failure to pay the respond-

ent on the fifth day of August was occasioned by accident, without any fault or negligence on the part of the petitioner.

If the petitioner had collected the amount, and had it in his house to pay the respondent on that day, but on the night previous his dwelling had taken fire, and the money had been consumed, no one would doubt that the non-payment was the result of accident. If the petitioner had made arrangements with a bank, and they had agreed to furnish the money on certain security, and the security had been given, but owing to some sudden and unexpected revulsion in financial affairs they had refused to fulfill their agreement at the last hour, could there be any doubt that the failure to pay according to the decree was owing to accident? Wherein does this case differ in principle? The uncle of the petitioner was both able and willing to furnish the money. He had agreed to do so, and, looking at probabilities in relation to future events, it was as morally certain that the money would be furnished in the case of the uncle as in the case of the bank. There is a degree of uncertainty in regard to all expectations, and no more ought to be required in relation to future obligations imposed by law, than that such measures shall be taken to fulfill them as will render it reasonably certain, so far as human sagacity can foresee, that they will be performed. If such measures are taken and they result in a failure to pay as the decree requires, how can it be said that a party has been guilty of negligence? Even in actions at law no greater degree of care is required to avoid injuries to others while in the performance of lawful acts, and if damages result they are regarded as occasioned by inevitable accidents. Applying this rule, and considering the case at the time the promise was made, was there any reasonable doubt, that would suggest itself to a man of prudence and sagacity, that the money might not be furnished? The relation of the parties was that of uncle and nephew. The uncle had agreed to furnish the money. The case removes all doubt of his ability to do so. He knew the importance of fulfilling his promise. He knew his nephew was depending upon him, and that it would be worse than cruelty to disappoint him at the last. Every

person in like circumstances would be led to suppose that the promise of the uncle was equivalent to having the money in hand.

We think therefore that the petitioner was prevented from paying the respondent the amount of his claim on the third day of August as he had intended, by the happening of some unforeseen event, over which the petitioner had no control, and that he was consequently free from fault.

These considerations seem to decide the case for the petitioner, for he had but one day remaining in which to comply with the decree of the court, and it would be quite remarkable if a man in his pecuniary circumstances could raise so large a sum of money in a few hours. But it appears that he found a man by the name of Russell who had United States bonds sufficient to pay the amount due, but not the money. Mr. Russell was willing to advance the bonds, if the respondent would accept them in payment. At the request of the petitioner he went to the house of the respondent between nine and ten o'clock in the evening of the fifth day of August, and found that he had retired. He made known his business to the wife of the respondent and requested her to inform her husband that he had come at the request of the petitioner to redeem the mortgaged premises, and was prepared to do it. The message was delivered to the respondent and word was returned by him that he was sick; and the attempt to redeem the premises failed. There is no finding in the case that he was in fact sick. If he had been in that condition he would have been anxious to have shown it, and the fact would have appeared, especially after evidence had been given of the word sent to Mr. Russell. The statement was doubtless untrue, and made for the purpose of avoiding Mr. Russell. He was anxious to get the four thousand dollars worth of property in addition to his mortgage claim, and if he could obtain it by a falsehood he was ready and willing to make the statement. It is true he was not bound to take the bonds in payment; but the word that was sent by Mr. Russell was, that he was prepared to redeem the premises. The respondent therefore supposed that he had the money.

Bostwick *v.* Stiles.

This conduct of the respondent is in keeping with his conduct afterwards. The petitioner informed him some time after, (how long does not appear,) that he was desirous of redeeming the premises and expressed his readiness to pay the money if the respondent would accept it. The respondent said that all he wanted was his money and interest. The petitioner then requested him to name a time for doing the business, but the respondent never fixed any time for that purpose. The sum to be paid was large, and the request was reasonable if the respondent was sincere in what he stated. But it is easy to see there was no sincerity in it. If he had been willing to accept the money he would have named a time, for he would have been anxious to have the business closed. The motive that induced him to give a false account of his condition, in order to avoid receiving payment from Mr. Russell on the evening of the last day of redemption, was actuating him now. He had got more than eight thousand dollars worth of property for considerably less than one-half of its value, and he intended to keep it. He did not think it advisable to say so directly, and thought it expedient to deceive the petitioner for a time by the show of willingness to take the money, but took good care not to name a time when he would accept it. If the petitioner had tendered the amount the day after the time limited for redemption had expired, it is clear he would have refused it, and the tender would have been useless. This conduct of the respondent does not entitle him to favor in a court of equity, and on the whole we are of the opinion that the prayer of the petition should be granted, and so we advise the Superior Court.

In this opinion the other judges concurred.