SUSAN L. WELLS AND ELEANOR E. WELLS *v.* CLARENDON W. TUCKER AND HENRY C. WELLS.

[In Chancery.]

*Two Mortgages on the same Land. Redemption. Payment. Purchase of Note. Husband. Witness.*

1. When one purchases land incumbered with two mortgages, each on an undivided half, and assumes and agrees to pay both as part of the purchase money, he cannot redeem the one without redeeming the other. By force of the purchaser's agreement, as to him and all under him, the two mortgages are consolidated into one, the burden of each resting on the whole; and both must be redeemed.
2. Facts, q. v., found by a master, held to prove a payment instead of a purchase of a note.
3. WITNESS. HUSBAND. When a husband is made a party defendant with others in a bill brought by his wife to redeem, on the ground that she has a homestead right in the premises, he is not a witness for her.

BILL to redeem. Heard on bill, answers, and master's report, March Term, 1884, Washington County. POWERS, Chancellor, decreed that the bill be dismissed.

The oratrix, Eleanor C. Wells, was the wife of the defendant, Henry C. Wells, and Susan L. Wells was his mother. It appeared from the report, that the defendant, C. W. Tucker, in 1874, conveyed a farm, subject to two mortgages, to the defendant, H. C. Wells. Said Tucker gave one of said mortgages on an undivided half of said farm to his mother, Elvira D. Tucker, to secure to her a life support, and also three $500 notes; and at the same time executed the other mortgage on the other undivided half of said farm to his two sisters—Ann Genet Lane and Carrie L. Tucker— to secure $2,500. H. C. Wells went into possession of the farm soon after it was deeded to him, and, as part of the consideration, he paid Elvira D. $1,500 in full discharge of

her life support so secured. The notes were payable "on or before" certain dates at the option of the maker. Wells, by reason of the depreciation in real estate, had determined to pay only one of the two mortgages; namely, the one se-- curing the life support.

The master found:

"And as further part of said consideration and purchase money the said Henry C. Wells assumed and agreed to pay all of the said notes secured by the said two mortgages, and to save the said Clarendon W. Tucker harmless therefrom, as set forth in said warranty deed, to wit:

"'There is a mortgage on the premises hereby conveyed, situated in Calais, of $1,250, specified in notes given Carrie L. Tucker, and $1,250 in notes given payable to Ann Genet Lane, and also $1,500 in notes given payable to Elvira D. Tucker. Said notes were all signed by me, the said Clarendon W. Tucker, and the payment of secured by said mortgage agreeably to the tenor of said notes. And the said Henry C. Wells assumes the payment of said notes agreeably to their tenor, and to save the said C. W. Tucker harmless therefrom.' And there was no other or different agreement of H. C. Wells to pay Tucker's notes except this provision in H. C. Wells' deed.

"I find that as between said Clarendon W. Tucker and said Henry C. Wells the trade for the said real estate in Calais was all one trade, and that the assumption of the payment of said mortgage notes secured on the farm was all one assumption to pay the notes and a guaranty to save said Clarendon W. Tucker harmless from the payment of any and all of them."

May 1, 1881, H. C. Wells conveyed by quit-claim deed the farm to his mother.

As to whether the note was paid or purchased:

"That about the 9th day of May, 1878, the said H. C. Wells, taking $30 that he borrowed of one Celestina Eddy and $470 of his mother's money, called on Elvira D. Tucker, and offered to let her have the money on said note, telling her that the $470 belonged to his mother, and that he wanted to take it up for his mother to hold, and to keep as an investment. The said Elvira D. declined to take the money and did not want to let the note go, when Wells told her that the note

was payable 'on or before,' and he 'had a right to pay it and take it up at any time, and do what he pleased with it,' and told her the interest would stop if she did not take the money."

*   *   *   " I do not find that H. C. Wells asked to purchase this note; but the words used were, 'pay the money on it, and take it up.' But I do find that she refused to sell the note, or to part with it, until he told her he had a right to 'pay and take it up at any time,' and if she refused the money, it would stop the interest. Then she took it (after consulting Warner), and delivered him (Wells) the note."

*   *   *   " I find that H. C. Wells  *   *   *  took advantage of the provision that the note might *be paid* 'on or before,' and that she would not have taken the money and given up the note, if it had not been for this provision in it."

*   *   *   " I find that some time after (three or four weeks), said Susan L. went to said Elvira D., after taking advice upon the subject, with said note, and requested her to endorse on the note the following words: 'Please pay the within note to Mrs. Susan L. Wells,' and sign her name to it, which she did, on the bottom of the note, on its inside, and said Susan L. again carried it away. Nothing was paid or taken for making this endorsement."

*   *   *   " I further find that said Susan L. acted in good faith in this matter, and that she came with H. C. Wells that day as far as Miss Eddy's (her relative's) house, and that she had previously made an arrangement with H. C. Wells, at his suggestion, to put this money into said note, and to hold it as a note, and the mortgage security on the farm to that extent. I find that she so understood this transaction, and intended to have it so, and was told by H. C. Wells that it would be a safe transaction or way to invest her money, and that she relied on the mortgage security."

The defendant, H. C. Wells, was " offered as a witness generally " to prove the allegations in the bill, both for his wife and mother.

*Shurtleff* and *Lampson*, for the oratrix.

Susan L. was a *bona fide* holder of the note and mortgage to that extent, and should be subrogated to the rights of

Mrs. Tucker. A court of equity will uphold a mortgage for the benefit of a party who has advanced money upon it honestly, and when there is no other relief.

*J. A. & Geo. W. Wing*, for the defendants.

Susan L. had no right or interest in the premises when she paid the note. It was a voluntary payment that did not bind the land or defendant Tucker; but her remedy was only on her son. 1 Jones Mort. ss. 663, 858, 865, 881; *Dickenson* v. *Williams*, 129 Mass. 182; 3 Pom. Eq. Juris. p. 191, s. 1206; *Downer* v. *Wilson*, 33 Vt. 1; *Collins* v. *Adams's Ex.* 53 Vt. 433.

The opinion of the court was delivered by

ROWELL, J. On the facts found by the master, and on the authority of *Collins* v. *Adams's Executor*, 53 Vt. 433, it is considered that the transaction touching the $500 note held by the oratrix, Susan L. Wells, amounted to a payment of said note by the defendant Wells, and not to a purchase thereof by the said oratrix. This leaves the said oratrix to stand for a right to redeem on her deed from the said defendant of May 1, 1881.

As to the oratrix, Eleanor E. Wells, she stands on her inchoate right of homestead in the premises; and it is not denied but that this gives her a right to redeem. But the question is, May they redeem one mortgage without redeeming both?

By accepting the deed from Tucker and wife, and going into possession under it, Wells assumed and agreed to pay both mortgages as a part of the purchase-money, and to save Tucker harmless and indemnified therefrom. As between Tucker and Wells, Wells thereby became primarily liable for the payment of said mortgages, and Tucker became his surety therefor, and the land became the primary fund out of which payment was to be made. It is clear, Wells failing to pay as he agreed, that Tucker could pay

and be subrogated in equity to the mortgage security. But this is not the only effect of Wells's agreement. By it the two mortgages were consolidated and made one as to Wells, and all persons claiming under him, and the burden of each was annexed to, and made to rest upon, the whole land; and this, not because the lien of each was thereby actually extended over the whole land, but because of the contract itself, which equity takes cognizance of, and will enforce in favor of Tucker as against Wells and all persons standing in his stead.

The case of *Welch* v. *Beers*, 8 Allen, 151, is full authority for this view, and was thus: Prescott held a mortgage for $500 on a whole tract of land, and had taken possession to foreclose. After the making of said mortgage, the mortgagor conveyed a part of the tract, with an agreement recited in the deed that the grantee assumed and was to pay the whole of said mortgage as a part of the purchase-money. Afterwards the mortgagor conveyed the remainder of the tract to the plaintiff in fee, not covenanting against said mortgage, but with an express understanding that it was to be paid in full by the prior purchaser. Prescott subsequently took a new mortgage of the first part for $1,200, with full knowledge of said agreement, and the value of that part was more than enough to pay the $500 mortgage; *Held*, that the plaintiff's part of the land was exempt from said last-mentioned mortgage, not because his deed of warranty left the whole burden of it to rest upon the other part, but because said agreement expressly annexed it to such part before the plaintiff purchased.

This is very analogous to the rule in equity, that when land subject to mortgage is sold by the mortgagor in separate parcels to different purchasers without an assumption by them of any part of the mortgage debt, and the deeds are duly recorded, or actual notice is had of the state of the title and the subsisting equities, the purchasers, as between

themselves, are charged and must contribute in the inverse order of the time of their purchases.

This rule rests upon the ground that when a mortgagor sells a part of the mortgaged premises without reference to the incumbrance, it is right as between him and the purchaser that the part still held by him should be first applied to the payment of the debt, and so equity charges it with such payment. But this is not, as said in *Welch* v. *Beers*, because a deed of warranty of part, of itself, directly creates a lien on the remainder for the whole amount of the mortgage, but because equity recognizes the mortgagor's contract as binding on subsequent purchasers who take with notice thereof.

So here, it is right, as between Tucker and Wells, that Wells should pay both mortgages before holding any part of the farm free from either; and a court of equity would not aid him as against Tucker, to redeem one of them only, and thus enable him to hold an undivided half of the farm free from both, for this would be contrary to the spirit of his agreement, and he who seeks equity must do equity. And the complainants have no better right than Wells himself had, for they sit in his seat.

There is no other question in the case material to be considered, unless it be whether Wells was a competent witness; and we think he was not. As between him and his wife, she is the substantial party, and in testifying, he would testify for her and not for himself. The law of the subject is fully considered in *Simkins & Wife* v. *Eddie*, 56 Vt. 612.

Decree affirmed and case remanded.