FREDERICK KOPPER *v.* JOHN M. DYER.

*Cross Cause:* JOHN M. DYER *v.* FREDERICK KOPPER, FRANK E. BRIGGS, and W. H. MERRITT.

[IN CHANCERY.]

*Chancery. Accident. Decree of Foreclosure Opened. Time for Payment Extended. Check, Payment by. Pleading. R. L. s. 766. Amendment. Cross-Bill. Bill taken pro confesso.*

1. ACCIDENT—DECREE—REDEMPTION—MORTGAGE. When a mortgagor, without his fault or neglect, is prevented by accident from paying an installment on the day named in a decree of foreclosure, on a bill brought to redeem, equity will grant relief; and he will be reinstated, but on terms that he satisfy the equitable rights of the other party.

2. ACCIDENT—MORTGAGE. The mortgagor had taken means to obtain the money for redeeming the premises, which rendered it reasonably certain that he would succeed; and he did not by reason of the failure of the party promising the money to meet him at the appointed time; and as the result of this unexpected occurrence, of which his agency was not the cause, he was delayed until after banking hours, and was thereby prevented from sending the money to the clerk of the court in season for payment within the time limited by the decree; *Held,* that it was an accident, and that the mortgagor was entitled to redeem.

3. BILL TO REDEEM—PLEADING—CHECK—PAYMENT. The bill was defective in that it was framed on the theory that the orator's personal check deposited with the clerk of the court for the installment was a payment of it; and that it did not contain an offer, or an averment of willingness, to redeem; but an amendment was allowed.

4. PARTIES. One purchasing *pendente lite* is bound by the decree, and need not be made a party.

5. CROSS-BILL. When a mortgagee obtains a decree of foreclosure, and the mortgagor brings a bill to redeem and procures an injunction restraining him, a

Kopper v. Dyer.

cross-bill brought by the mortgagee, claiming that the decree should be made absolute, will be dismissed; because there was no necessity for it. Possession could be given him by summary process under the statute, R. L. ss. 766-7; and he would be protected by the injunction bond, if he was entitled to anything for the use of the premises.

6. A cross-bill will also be dismissed where some of the defendants succeed, although it was taken *pro confesso* as to others, if they are all jointly interested.

7. COSTS. As the orator put his bill upon false ground, the defendant is entitled to his costs; also to the costs of his writ of possession and the execution of it.

BILL IN CHANCERY. Heard on the pleadings and special master's report, December Term, 1886, TAFT, Chancellor. Decree for orator according to the prayer of the bill, and that the cross-bill be dismissed.

It appeared that in August, 1880, John M. Dyer sold and conveyed to Frederick Kopper the premises described in the original bill, being the real estate known as the Lake Dunmore hotel property, in Salisbury, together with a large amount of personal property, for the agreed price of $13,500.

Of the purchase money, the sum of $10,500 was secured by a mortgage of the real estate and a mortgage of the personal property, both executed by Kopper to Dyer, August 23, 1880. The condition of the mortgage was that Kopper should pay four promissory notes amounting to $10,500, given by Dyer to Mary C. Goddard, secured by mortgage on land in Vergennes; and also should keep the property insured. Dyer foreclosed his mortgage on the real estate, and a decree was entered for the sum of $8,543.09, payable as follows: $500 January 1, 1885, and the balance on June 1, 1885. Said Goddard foreclosed her mortgage and the premises were redeemed by Dyer. The prayer of the orator's bill in this case was:

"For such relief as shall give the orator the benefit of the payment already made as much as he would have had if the currency had been paid into court, as was ordered by said decree; that said decree be opened, and further order made on terms, meet to the court, to relieve the orator from the loss and embarrassment that must result to him should no relief be granted, and he not be permitted to resume possession and

control of the premises and be deprived of the benefit of the payments already made, amounting to about $7,000, and the improvements about $15,000 ; for an injunction restraining the defendant from any further proceedings under the writ of possession."

The bill was dated January 6, 1885. An injunction was granted restraining the defendant from conveying the premises ; and from interfering with the orator, his family or boarders, etc. The master found as to the Goddard mortgage :

" A decree of foreclosure was entered at said term. On January 19, 1883, said Dyer, fearing that said Kopper might not satisfy said decree, and for the purpose of being sure that his own property at Vergennes would not be sacrificed, procured the National Life Insurance Company to hold in readiness for him the sum required to pay said decree ; and on May 23, 1883, obtained the same from said company, to wit: the sum of $8,947.24, and paid the same in satisfaction of said decree ; and said Dyer was compelled to pay to said company the further sum of $193.85 in consideration of its having held said amount in readiness for him from January 19 to May 23, 1883, as aforesaid."

He also found :

" On June 1st, 1885, George Briggs of Brandon, acting for Kopper, tendered to Dyer, the sum of 8,060 dollars in money, as payment of the installment of said decree falling due on that day. Dyer declined to receive the same, and said that Kopper did not owe him, but that he owned the property, and referred Briggs to his lawyer.

" Kopper afterwards filed his supplemental bill in said cause, setting up said tender, and claiming the benefit thereof, with said payment to said Wainright, as a compliance with the terms of said foreclosure decree.

" Dyer filed his answer to said bill September 22d, 1885, and an amendment thereto February 20th, 1886.

" On May 29th, 1885, Kopper conveyed the premises, together with the personal property thereon which had been mortgaged to Dyer unto Wyman H. Merritt and Frank E. Briggs, by warranty deed, duly executed, acknowledged and recorded, which deed was given Merritt and Briggs as security

to them for the raising of the money which 'was tendered to Dyer, June 1st, 1885, as aforesaid. Kopper also executed to Merritt the lease dated June 20th, 1885, which is described in the cross-bill.

"And Dyer afterwards, on April 14, 1886, filed his cross-bill against said Kopper, Merritt and Briggs, claiming that said foreclosure should be decreed to be absolute, and that proper process should be issued to enforce the same ; or, if it shall seem proper to the court to open said decree, that the same may be corrected in respect to said interest and other items, and a short time of redemption fixed. Demurrers to cross-bill having been overruled, the same was taken as confessed against Merritt and Briggs, and Kopper filed his answer thereto on June 19th, 1886."

A writ of possession was issued January 2, 1885, in favor of Dyer and served. The other facts are sufficiently stated in the opinion.

*Stewart & Wilds*, for the defendant.

The title became absolute in the defendant. *Converse* v. *Cook*, 8 Vt. 164.

The original and supplemental bill cannot be maintained as bills for redemption.

The suit is brought for an injunction, and is founded upon an alleged compliance with the decree. It asks for no accounting, and does not offer to pay what is due. If the defendant denied the orator's claim of substantial compliance with the decree, even though he had been willing that the orator should redeem upon payment of what was equitably due him, he must contest the bill. *Goldsmith* v. *Osborne*, 1 Edw. Ch. 560 ; *Beekman* v. *Frost*, 18 Johns. 544 ; *Perry* v. *Carr*, 41 N. H. 371 ; *Kemp* v. *Mitchell*, 36 Ind. 249 ; 2 Jones Mort. s. 1095 ; 5 Wait Act. & Def. 434.

So also a mortgagor who files a bill to redeem must offer to do equity by paying the mortgagee his debt, interest and costs. Bisp. Eq. 62 ; *Lanning* v. *Smith*, 1 Pars. Eq. Cases, 16 ; Story Eq. Pl. s. 40 ; *Thomas* v. *Warner*, 15 Vt. 110 ; *Langdale* v. *Hayter*, 7 Beav. 313.

The cross-bill was the proper remedy.

If the original bill is dismissed, the defendant, Dyer, without the aid of a cross-bill, would be obliged to resort to a suit in ejectment, or to precisely such a bill as this cross-bill, to obtain possession of the premises. Story Eq. Pl. ss. 156, 346, 393, 389, 429; *Bishop* v. *Paine*, 11 Ves. 197; *Echliff* v. *Baldwin*, 16 Ves. 267; *Turner* v. *Wright*, 4 Beav. 40; *Hoxie* v. *Carr*, 1 Sumner, 173; *Humble* v. *Shore*, 3 Hare, 119; *Whitbeck* v. *Edgar*, 2 Barb. Ch. 106; *Johnson* v. *Thompson*, 129 Mass. 398; 1 Smith Ch. Pr. 459.

New parties may be joined in a cross-bill. *Brandon Mfg. Co.* v. *Prime*, 14 Blatch. 371; *Brown* v. *Story*, 2 Paige, 593; *Stockard* v. *Pinkhard*, 6 Humph. (Tenn.) 119; *Fletcher* v. *Holmes*, 25 Ind. 458.

*Ormsbee & Briggs, J. M. Slade*, and *Noble & Smith*, for the orator.

It is the peculiar province of a court of equity to grant relief in cases of fraud, accident, or mistake. 1 Story Eq. Jur. ss. 110, 439, 823; *Bank* v. *Eldridge*, 28 Conn. 556; Pom. Eq. s. 439.

*Pierson* v. *Clayes*, 15 Vt. 93, is quite analogous to this case. There the parties had been negotiating for a settlement, by reason of which the mortgagor had allowed the terms of redemption to expire.

WILLIAMS, C. J., says: "Unless the Court of Chancery could relieve against such a decree, when the mortgagor had failed to perform, without any fault on his part, and in consequence of the acts of the mortgagee, there would be a manifest failure of justice. * * * There may be circumstances which would require them to relieve from forfeiture, where the mortgagee can be sure of receiving his debt."

In Jones on Mortgages, vol. 2, s. 1569, the author says: "The opening of a decree of foreclosure does not depend upon the inquiry whether the proceedings in the case were regular, but may depend wholly on equitable considerations in any way affecting the rights of the parties."

In the case of *Williamson* v. *Dale*, 3 Johns. Ch. 290, the defendant was innocently misled, and induced to believe that the sale of the mortgaged premises would not take place on the day appointed. The defendants petitioned to have the sale set aside and decree opened. The chancellor said : " There is no imputation of any unfair intention in the plaintiff, or the soli- citor, or of any unfair conduct at the sale, but I think that, under the circumstances, the defendants were innocently mis- led, without any culpable negligence imputable to them." Ac- cordingly, the sale was set aside.

The case of *Bostwick* v. *Styles*, 35 Conn. 195, is, in all essential respects, like this case.

It was the duty of Dyer to accept the tender ; and the tender had the effect to stop the interest. *Pierson* v. *Clayes*, 15 Vt. 93. The cross-bill was properly dismissed. *Rutland* v. *Paige*, 28 Vt. 181.

The opinion of the court was delivered by

ROWELL, J. Kopper seeks relief on the ground of accident. That chancery may grant relief on that ground in cases of this kind cannot be doubted ; and the first question that arises is, Has the orator made a case that calls for the interposition of the court in his behalf ?

The term *accident*, in its legal signification, is difficult to define. Judge STORY defines it as embracing " not merely inevitable casualty, or the act of Providence, or what is tech- nically called *vis major*, or irresistible force ; but such unfore- seen events, misfortunes, losses, acts, or omissions as are not the result of any negligence or misconduct in the party" affected thereby. 1 Story Eq. s. 78. Mr. Pomeroy justly criticises this definition as including what are not accidents at all but mis- takes, and as omitting the very central element of the equitable conception, and defines it thus : " Accident is an unforeseen and unexpected event, occurring external to the party affected by it, and of which his own agency is not the proximate cause, whereby, contrary to his own intention and wish, he loses

some legal right or becomes subjected to some legal liability, and another person acquires a corresponding legal right, which it would be a violation of good conscience for the latter person, under the circumstances, to retain." 2 Pomeroy Eq. s. 823, n. 1. And the chief point of the thing is, that because of the unforeseen and unexpected character of the occurrence by which the legal relation of the parties has been unintentionally changed, the party injuriously affected thereby is in good conscience entitled to relief that will restore those relations to their original character, and place him in his former position. *Ib.* s. 824. But, as a general rule, relief will not be granted unless it can be done with justice to the other party ; for if he cannot be put in as good a situation as he would have been in had the other party performed, the court will not interpose. *Rose* v. *Rose*, Amb. 331.

Equity in many instances relieves against forfeitures occasioned by the non-payment of money at a day certain ; and this, although there is no accident, but negligence instead ; on the ground that the condition and the forfeiture are regarded as merely security for the payment of the money. This is the ground on which tenants are relieved from forfeitures for the non-payment of rent as stipulated, and mortgagors are allowed to redeem after the law-day has passed. And although the agreement is not wholly pecuniary nor measured by pecuniary compensation, still, if the party bound by it has been prevented by accident without his fault from an exact fulfillment, so that a forfeiture is thereby incurred, equity will interpose and relieve him from the forfeiture, upon his making compensation, if necessary, or doing everything else in his power to satisfy the equitable rights of the other party. 2 Pomeroy Eq. s. 833.

In *Cage* v. *Russell*, 2 Vent. 352, it is laid down as a standing rule of equity that a forfeiture shall not bind when the thing can be done afterwards, or any compensation can be made for it. Forfeitures are odious, and courts struggle against them ; and relief is granted for the non-performance of divers

collateral acts whereby they are incurred; as, for not laying out a specific sum in repairs in a given time—*Sanders* v. *Pope*, 12 Ves. 282; for cutting down timber when covenanted against —*Northcote* v. *Duke*, Amb. 511; for not renewing a lease in time—*Rawstorne* v. *Bentley*, 4 Bro. C. C. [*415]: and the like. Relief is also granted against forfeitures incurred by unintentional breaches of the condition of mortgages for support, on terms that the party in fault fully compensate and indemnify the other party for all he has lost by reason of the breach. *Henry* v. *Tupper*, 29 Vt. 358.

In *Adams* v. *Haskell*, 10 Wis. 123, the defendants were prevented by accident from reaching the place of a foreclosure sale until after it was completed, and the court for that reason ordered a resale, but on terms.

In *Pierson* v. *Clayes*, 15 Vt. 93, the orator, by reason of pending negotiations of settlement, without negligence on his part, let the time of redemption expire; and he was relieved by opening the decree and giving further time to redeem.

The case of *Bostwick* v. *Stiles*, 35 Conn. 195, is confessedly much in point. That was a bill to open a decree of foreclosure and obtain further time. The mortgage debt was about $4,000, and the value of the premises twice that sum. The time limited for payment was August 5th. The petitioner intended to redeem, but not having sufficient means of his own, he applied to his uncle—a man of property—to help him, and he agreed to, and to furnish the money on August 3d, on which the petitioner relied; but for some reason not explained he did not furnish the money as agreed, and the petitioner delayed making other arrangements until the evening of August 5th, when he applied to Russell for assistance. Russell had no money, but plenty of government bonds, and agreed to make payment in them if defendant would take them, and accordingly went to defendant's house that evening after defendant had gone to bed, and told his wife that he had come prepared to redeem the mortgage for the petitioner, but defendant did not get up, but sent word by his wife that he was sick, and Russell went away.

Kopper *v.* Dyer.

On this state of facts the court held that the petitioner's failure to pay on August 5th was occasioned by accident, without fault or neglect on his part, and that the accident lay in the fact of his uncle's failure to furnish the money as agreed, and as the petitioner had reason to believe he would. The court says that there is a degree of uncertainty in regard to all business expectations, and that no more ought to be required in respect of future obligations imposed by law than that such means shall be taken to fulfill them as will render it reasonably certain, as far as human sagacity can foresee, that they will be performed.

It is common in England to enlarge the time of redemption on application before the day of payment; and though the indulgence is not granted of course, it is said not to require a very strong case to obtain it. And the time may be enlarged more than once. Thus, in *Jones* v. *Creswicke*, 9 Sim. 304, after the time had been enlarged, and after the order absolute had been made though not drawn up, the time was again enlarged, on the ground that the man who had agreed to lend the defendant the money was prevented by illness from going up to London on the day it was due, and his wife, whom he had deputed to carry it up, was prevented from doing so bcause the London coach was full the day before. And see *Edwards* v. *Cunliffe*, 1 Madd. 287.

And the decree may be opened after the order absolute has been made and enrolled. Thus, in *Ford* v. *Wastell*, 6 Hare, 229, notwithstanding the order absolute had been drawn up and enrolled, the decree was opened because all the plaintiff's property was involved in an administration suit that she was justified in believing would terminate in season to enable her to avail herself of her property with which to meet the payment, but which had not yet terminated. See also *Thornhill* v. *Manning*, 1 Sim. N. s. 451, in which the promptness of the mortgagor in applying was regarded as the great and important feature in the case to guide the court in deciding what it ought to do.

Applying these principles as shown and illustrated by the cases, it is quite out of the question to say that the defendant is entitled to keep this property, and that the orator has not made a case that calls for the interposition of the court in his behalf.

The orator gave $13,500 for the property, and had paid $2,724 towards it, and expended about $10,000 upon it in improvements and repairs, and on January 1, 1885, the time limited by the decree for paying the installment of $500, he believed the real estate fairly worth $5,000 or $6,000 more than he gave for it. He was exceedingly anxious to redeem the property, but had no available means of his own, and relied for means wherewith to pay his debts partly on income assured to members of his family, and partly on the equity of redemption in the property, his ability to make which available at the value he put upon it being his only means of escape from absolute bankruptcy. It appears that his wife and her sister, Miss Jenkins, owned property in New York city, as to which he was agent, and that before and on December 29, 1884, he had been in negotiation with one Martin of that city in respect to leasing it to him, and it was agreed that on delivery of proper leases thereof, Martin should advance to him $650 towards performance on his part, and Kopper relied on the use of that money to pay the $500 installment. Accordingly, he went to New York on December 30th, with the leases executed, found Martin and made an appointment with him for eleven o'clock the next day, and in going to the place at the time appointed, found a message postponing the appointment to the office of an attorney down town at two that afternoon; whereupon, being unable to communicate with Martin, he went to the office down town at two, and found that Martin had been there but had gone. He afterwards met Martin on the street, and being exceedingly anxious to obtain the money, persuaded him to go back to the attorney's office, but he being out, they went to another attorney's office, and he was out, and finally he persuaded Martin to give him his check for $650

before the leases were approved by an attorney.   But this was after three o'clock, when all the banks in the city were closed. Said check was good, but being drawn on a bank in the upper part of the city, and it being after banking hours, it was impossible for Kopper to draw the money on it that day.   He had for several years kept a deposit account with the Second National Bank of that city, and had at this time a small balance standing to his credit there, and that bank was accustomed to place to his credit the amount of such checks as he deposited there properly indorsed.   He had previously carried checks to that bank after business hours for deposit, handing them in over the railing, to be credited to him at the opening of the bank next day.   On this occasion he properly indorsed said check "for deposit," and sent it to said bank by a district messenger boy, but whether it reached the bank or not that day does not appear.   At the same time he drew two checks on said bank to the order of the person who was then the clerk of the court in which the decree was obtained, one for $575, which he supposed to be the amount required to pay said installment, but which was in fact more than was required, and one for $25, for a sum otherwise payable to the clerk, enclosed them in an envelope with a letter to the clerk, went to the Grand Central depot, and sent the package to Middlebury by the porter of the sleeping-car, enclosing it in another envelope to the station-agent there, requesting him to deliver the package to the clerk immediately, which he did on the morning of January 1st, which was a legal holiday in New York, and the 650-dollar check was passed to Kopper's credit by the Second National Bank on the next day—the first business day after it was received.   Dyer refused to take Kopper's check of the clerk, and the clerk did not treat it as payment of the installment, nor regard it as available funds in his hands until it was paid and the avails credited to him by the collecting bank, which was on January 5th, on which day he was trusteed by some of Kopper's other creditors, and on the 6th this bill was brought.

On these facts, and the others disclosed by the record, Kopper cannot justly be charged with negligence. The means he had taken to obtain the money rendered it reasonably certain that he would succeed, and that he was anxious to obtain it abundantly appears. That he did not meet Martin at eleven nor at two, was an unforeseen and an unexpected occurrence, external to himself, of which his agency was not the proximate nor even the remote cause, and thereby he was prevented from sending his money seasonably in a form that would have been treated as payment, whereby, contrary to his own intention and wish, he lost his legal right to pay, and Dyer acquired a legal right not to have him pay; and in these circumstances, Kopper is entitled to relief that will reinstate him in his former position, on terms that he satisfy the equitable rights of the other party.

But he cannot have relief under his bill as drawn, for it is not adapted to his case. The original bill goes upon the ground that he is entitled to have his attempted payment of the first installment treated as an actual seasonable payment; while the supplemental bill sets up a tender of the other installment, and asks that it be adjudged a payment thereof, and that the defendant be decreed to accept and receive the same in full satisfaction and discharge of the decree. But his attempted payment was not payment, and he is not entitled to have it treated as such, because neither the money nor its equivalent seasonably came into the hands of the clerk, and Dyer was not bound to accept and receive his check as payment, though he might have safely taken the money after the time expired, if he could have got it; for taking an installment after the time for paying it has expired does not open the decree as to installments for the payment of which the time has not expired. *Smalley* v. *Hickok*, 12 Vt. 153; *Gilson* v. *Whitney*, an unreported case in Windsor County a few years ago, *ut audivi.* Nor was the tender of the second installment effective; for not having paid the first, he had no legal standing for tendering the second.

Redemption is the appropriate relief in this case. Indeed, it is said that whenever a mortgagor is driven to the necessity of filing a bill against the mortgagee, it must be one to redeem, and that the court can relieve him only by allowing a redemption. *Goldsmith* v. *Osborne*, 1 Edw. Ch. 560; *Cholmley* v. *Countess of Oxford*, 2 Atk. [267]; Lord Langdale in *Dalton* v. *Hayter*, 7 Beav. 313. But the bill lacks some of the essential elements of a bill to redeem. It neither offers, nor avers a willingness, to pay, which is necessary by all the authorities.

But inasmuch as the orator is entitled to relief, he should not be turned out of court, but allowed to amend his bill into a bill to redeem, if he shall be so advised. *Horrigan* v. *Bacon*, 57 Vt. 644.

There was no necessity for bringing the cross-bill. The chattel mortgage was not embraced in the original bill, and so could not be the subject of a decree; and discovery of property subject to it could not aid in defending the original bill. As to the execution of the decree by giving possession, that can be done by summary process. R. L. ss. 766, 767; *Kershaw* v. *Thompson*, 4 Johns. Ch. 609; *Ludlow* v. *Lansing*, Hopk. Ch. 231; *Valentine* v. *Teller*, Ib. 422; *Yates* v. *Hambly*, 2 Atk. 237. As to the use of the premises pending suit, the defendant would be entitled in respect thereof, if at all, only on failure of the original bill, in which event he could avail himself of his rights by way of claim for injunction damages. And as to the alternative prayer for foreclosing any remaining equity, that would be the result of any decree on the original bill. Nor was there any necessity for bringing in Briggs and Merritt, for they purchased *pendente lite*, and so will be bound by any decree made.

Briggs and Merritt were treated in argument as entitled to the benefit of their demurrer; but if they are not, because the bill has been taken as confessed as to them, yet Kopper's defence avails for them; for when the defendants are jointly interested, a decree *pro confesso* as to some merely takes away their standing in court, and disentitles them to appear or to be

heard, on many questions certainly, without an order of court; but the success of the others avails for them, and the bill will be dismissed as to all.   1 Hoff. Ch. Pr. 554 ; *Clason* v. *Morris*, 10 Johns. 524 ; *Frow* v. *De La Vega*, 15 Wall. 552.

As to the terms that will satisfy the equitable rights of Dyer.

As between the two, it belonged to Kopper to pay the Goddard mortgage, and Dyer stood as his surety in respect thereof. *Field* v. *Hamilton*, 45 Vt. 35 ;  *Wells* v. *Tucker*, 57 Vt. 223 ; *Comstock* v. *Drohan*, 71 N. Y. 9.   Hence, Dyer is entitled to be reimbursed, not only the principal sum that he paid to redeem that mortgage, but his reasonable costs and expenses in that behalf in good faith incurred.  *Hayden* v. *Cabot*, 17 Mass. 168 ;  *Downer* v. *Baxter*, 30 Vt. 467 ;  *Hulett* v. *Soullard*, 26 Vt. 295 ;  *Comstock* v. *Drohan*, 71 N. Y. 9.

As to the costs of that foreclosure, it sufficiently appears that they were properly incurred, and Dyer is justly entitled to reimbursement.   But as to the amount paid by him to the insurance company for holding in readiness the money wherewith to redeem, it does not sufficiently appear that that was such a prudent and necessary thing to do in the circumstances as to entitle him to reimbursement.

The mortgage of the premises in question being conditioned to keep the property insured for Dyer's benefit, which Kopper neglected to do, he is chargeable with the insurance premium of $75 that Dyer was compelled to pay in 1884, and this was included in the decree.   He is also chargeable with the $60.30 paid by Dyer for taxes, as shown by the master's report, as well as with all the other taxes that Dyer has since paid, or that he shall hereafter pay or become liable to pay on the property.

As Kopper put his bill upon false ground, namely, that he had performed the decree when he had not, Dyer was justified in defending it, and should recover his costs ; and as Dyer had a right, after the decree became absolute, to deal with the property as his own, he is entitled to the costs of his writ of

Goodale *v.* Frost.

possession and of the execution of it.   *Cree* v. *Lord*, 25 Vt. 498.   In *Thornhill* v. *Manning*, 1 Sim. N. s. 451, the costs of an ejectment were allowed in a similar case.

The decree dismissing the cross-bill is affirmed; but the decree for the orator in the original bill is reversed, and the cause remanded, with mandate.