HARRIET S. EARLE'S ADMR. *v.* HARRIET M. BLANCHARD ET AL.

May Term, 1911.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON AND POWERS, JJ.

Opinion filed December 8, 1911.

*Mortgages—Absolute Deeds as Mortgages—Parol Evidence—*
*Sufficiency of Evidence—Agreements Affecting Redemption—*
*Purchase of Equity of Redemption by Mortgagor—Validity—*
*Tender of Performance of a Contract—Requisites—Payment*
*into Court—Finding of Facts—Presumptions in Support*
*of Decree Below.*

A deed absolute on its face may be shown by parol to be a mortgage.

More than a mere preponderance of evidence is required to secure the reformation of a deed.

There is no middle ground between a mere preponderance of evidence and the exclusion of reasonable doubt.

It requires proof beyond a reasonable doubt to establish that a deed, which is a first conveyance and absolute in form, without any further writing evidencing the transaction, is in fact a mortgage.

The equitable right of redemption is an inseparable incident of a mortgage, and no contemporaneous understanding, however formally expressed or artfully concealed, will deprive the debtor of that right, and it can be defeated only by a subsequent agreement on a further consideration.

A mortgagee has a right to purchase the equity of redemption, but, in view of the relation of the parties, the transaction will be carefully scrutinized.

A conveyance of mortgaged premises by the mortgagor to the mortgagee will be deemed a mere change in the form of the security, still subject to the right of redemption, unless it clearly appears that both parties intended that the conveyance should be a bar to the equity of redemption; and so the rule that requires more than a preponderance of evidence to establish an absolute deed as a mortgage has no application to the conveyance of mortgaged premises by the mortgagor to the mortgagee.

Where a mortgagor after condition broken conveyed the premises to the mortgagee by warranty deed, and the orator's evidence tended to show that the mortgagee agreed to reconvey the premises on the payment of a specified sum of money, with specified interest, evidence that the mort-

gagor, after the conveyance, paid interest as called for by the claimed agreement was properly received to show that the subsequent action of the parties correspond with that agreement.

Where mortgaged premises were conveyed by the mortgagor to the mortgagee, under an agreement that they should be reconveyed on payment of a specified sum of money by the mortgagor, the subsequent tender of that sum by the representative of the mortgagor to the representatives of the mortgagee was a tender of performance by one party to a contract as a condition precedent to performance by the other party, and so the tender was properly accompanied with a demand of the agreed reconveyance, and it was not necessary to bring the money into court to keep the tender good.

Where the facts found justify the inference that a mortgagor's solicitor waived any objection to the form of the payment fixed by the decree of foreclosure for the redemption of the mortgaged property, this Court will presume in support of the decree below that such inference was made by the trial court.

APPEAL IN CHANCERY. This is a suit by Homer L. Skeels, as administrator of the estate of Harriet S. Earle. The orator alleges that a certain warranty deed from said Harriet S. Earle to James S. Brown, conveying said Harriet's home farm, was in fact a mortgage, and prays for the right to redeem the premises. Heard on the pleadings, master's report, and defendants' exceptions thereto, at the December Term, 1910, Windsor County, *Waterman*, Chancellor. Decree overruling the exceptions, adjudging said deed to be a mortgage, and giving the orator the right to redeem the premises by payment of a designated sum of money within a specified time. From this decree the defendants appealed. On May 5, 1911, was heard defendants' petition asking that the orator's bill be dismissed with costs, for that, the orator had not seasonably paid the sum of money specified in said decree giving him the right to redeem. From the decree dismissing this petition the defendants also appealed. The opinion sufficiently states the case.

*William W. Stickney, John G. Sargent,* and *Homer L. Skeels* for the orator.

*Davis & Davis* for the defendants.

The measure of proof that is required to establish that a

deed absolute in form is in fact a mortgage is proof beyond a reasonable doubt. *Reynounds* v. *Campbell*, 45 Mich. 529; *Howland* v. *Blake*, 97 U. S. 624; *Cadman* v. *Peter*, 118 U. S. 73; 1 Jones on Mort. (5th Ed.) 29; *Gerault* v. *Adams*, 61 Md. 1; *Schade* v. *Schade*, 3 Neb. 140; *Zuner* v. *Lyons*, 40 Iowa 510; *Haynes* v. *Swann*, 6 Heisk. 560; *State* v. *Cincinnati*, 6 Ohio 169; *Adams* v. *Rigler*, 92 Ala. 478; *Schlitz Brewing Co.* v. *Ayres*, 60 N. J. Eq. 190.

MUNSON, J. It is the settled law of this State that a deed absolute upon its face may be shown by parol evidence to be a mortgage. Rob. Vt. Dig. 1855, pl. 33. It is equally well settled in this State that more than a mere preponderance of evidence is required to secure the reformation of a deed. Rob. Vt. Dig. 2363, pl. 12. The decree establishing the conveyance of the orator's intestate as a mortgage rests upon a finding made on a fair balance of evidence; and the orator cites in support of the sufficiency of the finding the following cases: *Campbell* v. *Worthington*, 6 Vt. 448; *Baxter* v. *Willey*, 9 Vt. 276, 31 Am. Dec. 623; *Wright* v. *Bates*, 13 Vt. 341; *Hyndman* v. *Hyndman*, 19 Vt. 9, 46 Am. Dec. 171; *Hills* v. *Loomis*, 42 Vt. 562; *Howard* v. *Scott*, 50 Vt. 48. The defendants contend that the measure of proof required is the same as in cases of reformation.

In *Campbell* v. *Worthington*, the Court considered that the facts disclosed by the depositions read in evidence were entirely irreconcilable with any other view than that the land was held as security for a debt. In *Baxter* v. *Willey*, the question whether the transaction was a mortgage was submitted on an agreed statement of facts; so there can have been no question as to the degree of certainty with which the case was made out. In *Wright* v. *Bates*, the Court reviewed the testimony, and said there could be no reasonable doubt that the land was conveyed as security for money advanced. In *Hyndman* v. *Hyndman*, there was at first an absolute deed and a writing of defeasance. Subsequently the evidences of indebtedness and the writing of defeasance were mutually surrendered, upon a parol agreement that the defendant should have the property for a certain sum, free from the equity of redemption, and should sell it and pay the orator whatever he should receive above

that sum and an allowance for his trouble. Later the parties executed an indenture, which recited that the defendant held a warranty deed of the premises in consideration of his having paid the orator a certain sum, and fixed a time for repayment, and provided that on default thereof the defendant should sell the property at auction and account for the avails as above stated. The orator failed to pay, and the defendant had the property sold at auction, himself becoming the purchaser. In disposing of this case, the Court expressed itself as inclined to the opinion that the orator ought to be permitted to redeem. In *Hills* v. *Loomis*, upon a consideration of the testimony taken and filed, the Court thought it was clear that the parties fully understood that the deed was to be merely security for the money paid, and that the contrary conclusion could not be arrived at without disregarding the most obvious inferences to be drawn from undisputed circumstances. In *Howard* v. *Scott*, the orators excepted to the report for that the finding that the deed was in effect a mortgage was against the weight of evidence, and because that was a question for the court and not for the master. There was no exception to the report on the ground that it did not appear that the master had reached his ultimate finding with the requisite degree of certainty. In sustaining the decree overruling the exceptions, the Court said that when there is evidence tending to establish the facts found the Court will not review the findings as regards the weight to be given to the testimony, and that the party attacking the report on this ground must satisfy the Court that the master has acted corruptly, "or has been led astray by having entertained a mistaken view of the law applicable to the testimony." The Court nevertheless proceeded to express its opinion that the testimony fully warranted the master in finding the facts reported in regard to the deed. It is clear that if the evidence fully satisfied the mind of the master, it was not for the Court to reverse his finding on its own view as to the weight of the evidence; and there is nothing in the opinion that necessarily implies more than this.

It appears from this review of the cases cited by the orator that our Court has generally placed itself upon ground which

satisfies the rule contended for by the defendants, but without the existence of such a rule being brought in issue or referred to.

The case of *Herrick's Admr.* v. *Teachout,* 74 Vt. 196, 52 Atl. 432, should be considered in this connection. There, it appeared from the master's report that the orator's intestate took the title to the farm in question upon a parol agreement that he would relieve the estate from certain claims and pay the incumbrances resting on the farm, and deed the farm to the defendant when reimbursed for these expenditures, and that in default of such re-imbursement the farm might be sold, and the proceeds be applied in satisfaction of the sums so expended, and the balance, if any, be paid to the defendant. No question was raised as to the degree of certainty with which the facts reported were found. The case turned upon the effect to be given to certain terms and findings of the report deemed capable of two constructions, and with reference to this it was said that in all doubtful cases the law will construe the contract to be a mortgage, because such a construction is most likely to attain the ends of justice.

The orator cites in support of his contention certain language used by Judge Poland in *Rich* v. *Doane,* 35 Vt. 124. In this case there was an unconditional deed and a bond for reconveyance with parol evidence of what the parties said and intended. The opinion says that upon the face of the papers the transaction was clearly an absolute conveyance with a right of repurchase, but nevertheless prefaces an examination of the evidence with the statement that when enough is proved to render it fairly doubtful whether the conveyance was a mere security or an absolute conveyance with a right of repurchase, the premises will be held redeemable. This assertion was entirely unnecessary, for the transaction was held to be an absolute conveyance upon a final statement that certain stipulations about which there was no question were wholly inconsistent and incompatible with the claim that the deed was a mortgage.

It is definitely held in about half the jurisdictions of this country that more than a mere preponderance of evidence is required to show that a deed absolute in form is a mortgage. 1 Jones Mort. §§286-320. Various terms are used to indicate the degree of proof required. No middle ground between mere

preponderance and the exclusion of reasonable doubt has been recognized in this State. *Bradish* v. *Bliss*, 35 Vt. 327. Some authorities distinctly state that the rule in cases of this class is the same as in cases of reformation on the ground of mistake. *Howland* v. *Blake*, 97 U. S. 624, 24 L. ed. 1027. The rule regarding certainty is sometimes stated in apparently contradictory terms by the same court. It is said that the claim that an unconditional deed is in fact a mortgage must be established with certainty, and yet it is said that in doubtful cases the court will treat the transaction as a mortgage rather than a sale. It is evident that these statements are not regarded as inconsistent, and the explanation of the apparent discrepancy will doubtless be found in some classification of the cases.

The authorities cited upon this subject embrace cases where there was an unconditional first conveyance, without any further writing evidencing the transaction; cases where an unconditional conveyance was accompanied by a separate writing of defeasance, or other writings more or less indicative of its purpose; cases where a conveyance, manifestly or concededly a mortgage, was followed by some written or parol agreement relating to the original transaction; cases where this further arrangement consisted of or included an unconditional conveyance of the mortgaged premises to the mortgagee. It appears from this that the courts have dealt with two classes of deeds, the same in form, but sustaining different relations to the mortgage transaction. In the first, the inquiry is whether the deed was given as security for some obligation of the grantor, pre-existing, or then incurred. In the second, the inquiry is whether the relation of mortgagor and mortgagee was terminated by a valid transfer of the mortgagor's interest in the premises; and here the rules regarding a mortgagor's equity of redemption become important.

When it is once established that a mortgage exists, the equitable right of redemption attaches to the transaction as an inseparable incident. No contemporaneous understanding, however formally expressed or artfully concealed, will be permitted to deprive the debtor of this right. It can be defeated only by a subsequent agreement upon a further consideration. The right of a mortgagee to become the purchaser of the equity is

unquestioned, but the relations of the parties are such that the transaction will be carefully scrutinized.    *Russell* v. *Southard,* 12 How. 139, 13 L. ed. 927; *Peugh* v. *Davis,* 96 U. S. 332, 24 L. ed. 775.   The rule in such a case is said to be substantially the same as that prevailing when the deed of a beneficiary to his trustee is questioned.   *Villa* v. *Rodriquez,* 12 Wall. 323, 20 L. ed. 406.   A conveyance of mortgaged premises by the mortgagor to the mortgagee will be regarded as a mere change in the form of the security, unless it clearly and unequivocally appears that both parties intended that it should operate as a bar to the equity of redemption.   *Ennor* v. *Thompson,* 46 Ill. 214.   See also *Bradbury* v. *Davenport,*   114 Cal. 593, 55 Am. St. Rep. 92, 46 Pac. 1062; *Hall* v. *Hall,* 41 S. C. 163, 44 Am. St. Rep. 696.   When premises have been mortgaged to secure a debt, subsequent transfers of property on account of the debt are to be regarded *prima facie* as securities, and subject to the right of redemption.   3 Lead. Cas. Eq. 444. It is evident from these authorities that the rule which requires more than a preponderance of evidence to establish an absolute deed as a mortgage cannot be applied to a deed covering premises already mortgaged by the grantor to the grantee without overriding long established rules pertaining to the equity of redemption.

In July 1884, Mrs. Earle,  the orator's intestate, gave a mortgage of her farm to James S. Brown, the father of the defendants, to secure a loan of $2,000.   On the thirtieth day of March, 1901, the mortgage being then long overdue, Mrs. Earle gave Brown a warranty deed of the premises, and the mortgage was discharged of record.   There was evidence tending to show that this was done on Brown's suggestion to save double taxation.   The master says he is most inclined to the orator's version of the transaction, and finds accordingly by a fair balance of testimony.   The full finding is that Brown agreed at the time he took the deed of 1901 that he would reconvey the premises to Mrs. Earle on her payment of the $2,000, with three and one-half per cent interest, in the form of rent or otherwise, and the taxes.

The existence of a debt and of a mortgage to secure it is not the subject of this inquiry.   The case starts with these

facts established. The original deeds of the parties left nothing to be ascertained by parol. The question is whether there was a subsequent sale of the mortgagor's equity to the mortgagee; and the attitude of the courts towards this inquiry has been indicated. Our own reports contain similar expressions. It is said in *Hyndman* v. *Hyndman*, before cited, that "in all transactions between the mortgagor and mortgagee the conduct of the mortgagee will be watched very narrowly." A holding that the effect of an absolute deed from the mortgagor to the mortgagee can be controlled only by proof beyond a reasonable doubt would be inconsistent with the whole tenor of the law regarding equities of redemption. The orator has procured a finding by a preponderance of evidence, and we hold that this is sufficient. The *Hyndman* case is full authority for this holding.

It was proper to receive evidence that interest at six per cent was paid Brown until March 30, 1901, the day when the mortgage was discharged and the warranty deed given, and that three and one-half per cent, amounting to seventy dollars a year, was paid from that time until October 1, 1906. This was evidence that the subsequent action of the parties corresponded with the claimed agreement.

The defendants admitted in their answer that in April 1907, the orator tendered them $2,070 and demanded a quit-claim deed of the premises, and that they declined to receive the money and give the deed; and admitted further that they were then informed that they could have the amount tendered at the Ludlow Savings Bank and Trust Company at any time by calling for it and conveying their interest. No evidence regarding this tender was introduced at the hearing. The decree includes nothing for interest after the tender. The defendants claim that the tender was of no effect because clogged with a condition, and because not kept good by bringing the money into court. But this was not a simple tender; it was a tender of performance by one contracting party as a condition precedent to performance by the other. So it was proper to accompany the offer with a demand of performance by the other party, and was not necessary to bring the money into court. *Washburn* v. *Dewey*, 17 Vt. 93; *Hepburn* v. *Auld*, 1 Cranch 321,

2 L. ed. 122; *Bank of Columbia* v. *Hagner*, 1 Pet. 455, 7 L. ed. 219; *Cheney* v. *Libbey*, 134 U. S. 68; 33 L. ed. 818, 10 Sup. Ct. 498.

The decree permitting the orator to redeem upon payment of the sum due was correct.

The orator sent the clerk a certificate of deposit on the Ludlow Savings Bank and Trust Company for the amount of the decree; and the clerk treated this as cash, and entered a receipt of the amount on the docket, but did not collect the certificate. Soon after this, defendants' solicitor inquired of the clerk if the money had been received, and the clerk showed him the certificate and offered to indorse it to him if he wished to avail himself of the money. The solicitor "did not ask for the money under the decree, but asked that the clerk get the money on the certificate and deposit (it) in some other savings bank where it would draw interest, and objected to the certificate as not being money." The solicitor of the orator, on being informed of this, offered to send the clerk the full amount in gold or currency, and was informed by the clerk that he did not wish either sent. As we understand the findings, this was all within the time limited for making the payment. The clerk held the certificate until April tenth, which was after the time limited, and then deposited it in the Woodstock National Bank, receiving at the same time credit for the full amount; and the amount has since remained on deposit in that bank. The defendants claim that this was no payment, and that the bill should stand dismissed for want thereof.

This claim of the defendants was presented to the chancellor by petition soon after the expiration of the time limited for payment, and their petition was subsequently dismissed and a finding of the facts above stated placed on file. It is not necessary to consider what the law may now require as between legal tender and current money, nor what effect should be given to the entry made by the clerk on receiving the certificate of deposit, nor what the rights or remedies of the defendants or the orator would have been if the time limited had expired without anything having been done by the defendants' solicitor. A majority of the Court are satisfied that it may fairly be inferred from the facts found as to what took place between the clerk

and the defendants' solicitor, that the latter waived any objection to the form of the payment; and this Court will presume in affirmance of the decree that such inference was drawn by the chancellor.

*Decree dismissing defendants' petition affirmed, decree · for the orator affirmed, and cause remanded.*