## William H. Sawyer v. Maud E. Ewen

[173 A.2d 549]

March Term, 1961

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed May 2, 1961

Reargument Denied September 5, 1961

*Gelsie J. Monti* for the plaintiff.

*Finn & Davis* for the defendant.

**Hulburd, C. J.** The plaintiff has brought an action for damages in which he claims that, by reason of the defendant's negligence, he sustained injuries when he tripped over a protruding piece of roofing paper while shoveling snow from the defendant's porch roof. The jury, in the trial below, returned a verdict for the plaintiff in the sum of fifteen hundred dollars. This amount the plaintiff considered to be grossly inadequate, and, accordingly, he moved that the verdict be set aside as to damages only and a new trial be had on this issue alone. The defendant, on her part, moved for judgment notwithstanding the verdict. The trial court granted the defendant's motion and entered judgment for the defendant. The plaintiff's motion for a new trial on the question of damages was denied. The plaintiff claims error with respect to the trial court's action on both motions.

The evidence was such that the jury would have been warranted in finding the following facts. The plaintiff is an electrical contractor who had been boarding with the defendant at her home in Barre, Vermont, since 1938. Besides having a room, he rented and used the defendant's garage and part of the basement in connection with his business which he carried on from this point. On February 17, 1954, the veranda roof was leaking. The defendant asked the plaintiff to shovel the snow off the veranda roof. This was something which he had done before at the defendant's request and for which he had been paid in the past. The plaintiff went up on the veranda roof and got it partly shoveled when he caught his foot on a piece of roofing paper which was sticking up about three or four inches. He had just picked up a shovelful of snow and was going to turn and throw the snow off, when he caught his foot on the roofing paper. As he did so, he felt great pain so that he simply let himself go down on the roof where he lay for a short time. After this he came down and went into the house and saw the defendant, Mrs. Ewen. He was bent over from the accident and told her of the pain in his back and asked her if she knew the roof was in the condition it was. She stated she did. The plaintiff then wanted to know why she didn't tell him about it. Her reply was that she didn't think to tell him. It developed later that the defendant had known of the piece of roofing that had curled up since two or

three days before Thanksgiving in the previous fall. The plaintiff had not been on the roof during that winter before because this was the first snowfall that required shoveling. The upraised piece of roofing paper was covered with a 10-inch depth of snow at the time the plaintiff caught his foot on it.

Following the accident, the plaintiff suffered great pain and went to bed for the rest of the day and all the next and on February 19, 1954, two days after the accident, went to see Dr. Archambault who strapped his back. His diagnosis of the plaintiff's condition eventually was a hernia of the intervertebral disc. In March 1954, the plaintiff consulted Dr. Thomas Dunleavy, an osteopath. Later in April 1954, the plaintiff went to Burlington, Vermont, to consult Dr. Charles Rust. To do this, he was obliged to ride in an automobile with his knees on the floor and his elbows on the seat. Dr. Rust prescribed extended bed rest, but no relief resulted. Following this, the plaintiff saw Dr. Robert Fisher at the Mary Hitchcock Hospital of Hanover, New Hampshire, and eventually, after further examination and treatment, on November 30, 1954, an operation was performed on a disc in the plaintiff's back. Following the operation, the plaintiff did no work for six months and then gradually took on light work.

 Upon the evidence, as we have reviewed it, the jury returned a verdict for the plaintiff, but the trial court, on motion of the defendant, entered a judgment for defendant notwithstanding the verdict. The court's action in this regard is the first matter for our consideration. It is apparent that the defendant from the very outset had misapprehensions regarding the nature of this motion. This is indicated by the fact that the second ground of the defendant's motion was that the verdict was against the weight of the evidence. This is not a proper ground upon which a court may enter a judgment notwithstanding the verdict since it is addressed to the trial court's discretion. Judgments are not entered as a matter of discretion. In proper cases a trial court may, as a matter of discretion, set verdicts aside and order new trials, but it may not enter judgments on this basis any more than it may direct a verdict in its discretion. As applied to the evidence, a motion for judgment notwithstanding the verdict is tantamount to a motion for a directed verdict and is to be passed upon in the same way. *Johnson* v. *Hardware Mutual Casualty Co.,* 109 Vt. 481, 499, 1 A.2d 817 ; *McLaughlin* v. *Getman,* 117 Vt. 25,

26, 83 A.2d 513. In the remainder of his motion, the defendant enumerates the usual familiar grounds. We deal with them in turn. The first is that the evidence, taken in the light most favorable to the plaintiff, fails to establish that the defendant was guilty of any negligence. In arguing this point before us, counsel have advanced various ideas as to whether the plaintiff, when he went on the roof at the defendant's request, was an employee, an independent contractor, or a business visitor. We deem this unimportant. The undisputed fact is that he went there at the defendant's request. The question is whether there existed on the roof a dangerous and defective condition, known to the defendant but unknown to the plaintiff, which the ordinary prudent person would recognize was likely to cause injury to the plaintiff in doing the kind of work he was requested to do in the absence of being warned of that condition. After a careful review of the evidence, we are satisfied that its tendency is such that it was for the jury to say whether the defendant was negligent in failing to warn the plaintiff in the circumstances. The plaintiff's general familiarity with the property, his knowledge that the roof was leaking, his past experience in shoveling snow from the roof, the defendant's knowledge that plaintiff had been on the veranda roof in the fall of 1954 to put on the double windows—these were all modifying factors for the jury's consideration. They bore on whether the defendant's failure to warn the plaintiff amounted to a neglect which the ordinary prudent man would not have allowed to have happened. In other words, it was for the jury to say whether under the circumstances as they might find them there was a shortage of legal duty on the part of the defendant toward the plaintiff.

Even so, the defendant says, the question remains whether such negligence, if found, can be said to have proximately caused the injury. In this connection, the defendant makes a two-pronged approach to the problem. The first is by way of the plaintiff's declaration wherein he alleges that by reason of the upturned roofing, the plaintiff "caught his foot" and "fell." The defendant urges that the plaintiff did not fall, because in the plaintiff's own words, he let himself go down.

If the plaintiff was injured by reason of catching his foot, as he turned to throw a shovelful of snow, the fact that he was forced to let himself go down by the pain which resulted presents no essential inconsistency with the plaintiff's claim that he was hurt because of the

protruding roofing. Moreover, one of the primary meanings of the word fall is "a dropping down by the force of gravity." Oxford Universal Dictionary. If the injury resulted from the plaintiff's catching his foot rather than what followed, the plaintiff ought not to be barred on that account. When, however, the defendant pushes his argument further and says "it is not clear whether the injury was caused by the catching of his toe in the tar paper, or by the weight of the snow he was holding in his shovel," we think he presents a very difficult question as the evidence stands. There is much in the defendant's evidence which tends to support the latter alternative, but as the case comes to us such evidence is not for our consideration.

From the plaintiff's point of view, the jury had before them the testimony of Dr. Archambault, from which we quote:

Q. Doctor, but when you assume that he had this shovelful of snow in his hand and he caught his foot and then he fell to the roof, would that indicate any basis for your opinion as to the cause of the injury which you found?

A. Definitely, sir.

Q. And assuming those facts, do you have any question as to the cause of the injury?

A. Yes, sir.

Q. Now what do you mean by that?

A. I mean that after his history of shoveling snow and with the further history of catching his foot on roofing paper, and feeling the sudden impact of pain, there is no doubt in my mind that the causative factor was caused by the added compression of stubbing his foot and falling.

On cross-examination, Dr. Archambault was asked:

"And is it not true that you do not have a sufficient amount of information personally upon which to decide whether it was a compression resulting from the picking up of a heavy shovel full of snow or some other cause that brought on the disc protrusion?"

To which question the doctor answered:

"That is true, sir."

Dr. Dunleavy also testified on this subject. He certainly was cautious in his testimony. He stated that in his opinion "this manoeuvre on the roof could cause this condition;" that the act of the

plaintiff in shoveling snow and in catching his foot "together would have a bad effect in straining the back;" that he could not separate the two, but "it wouldn't help the condition if he stubbed his toe in that act."

The defendant assumes that medical expert testimony was required on the issue of proximate cause. We are not prepared to say that expert testimony was indispensible in this case on this question although, of course, it would be as a basis for future damages. The recent case of *Tracy* v. *Mass. Bonding and Ins. Co.*, 121 Vt. 371, 159 A.2d 86, discussed the extent of the necessity for expert evidence on the question of causation. In the absence of a pre-disposition or weakness, a man is normally able to shovel snow without rupturing a disc in his back. Whether there may have been a weakness or pre-disposition in this case were factors certainly in dispute and were for the jury's consideration. In any event, expert evidence was introduced by the plaintiff as we have previously set forth.

■ We think that the testimony of the two doctors, in the light of the other evidence in the case, was sufficient to take the question of causation to the jury. Dr. Archambault's testimony on cross-examination might properly be construed by the jury as meaning he had no *personal* way of knowing what happened on the roof, and so from that point of view he had no way of personally knowing the cause of the plaintiff's condition. It was for the jury to say what interpretation should be placed on Dr. Archambault's testimony. *Valenti* v. *Imperial Assurance Co.*, 107 Vt. 65, 69, 176 A. 413.

We come next to the question of whether the plaintiff was guilty of contributory negligence as a matter of law. The defendant has not called attention to any evidence indicating that the plaintiff went about his shoveling on the roof in a careless manner. It is true that the plaintiff had been on the roof in the fall of 1953 for the purpose of putting on storm windows. Just when this was done does not appear. There is no evidence that a portion of the roof was upturned at that time. At the time of the shoveling, the roof was covered with about ten inches of snow. The evidence fails to disclose any conduct on the part of the plaintiff such as to warrant the trial court to conclude that the plaintiff was guilty of contributory negligence as a matter of law. Its action, therefore, is not to be justified on this ground. It is equally clear that it cannot be said that the plaintiff assumed a risk, of which

the evidence fails to show he had knowledge or should have had knowledge. It cannot be said that the jury were bound to find that the plaintiff was on the roof as a roof repairman, who by reason of his mission was bound to anticipate that the roof might be dangerously defective. Clearly, on the evidence, the plaintiff did not go on the roof to repair, but merely to remove snow. There was no basis for the trial court to direct a verdict on the ground that the plaintiff had assumed the risk.

This exhausts the grounds involved by reason of the defendant's motion for judgment notwithstanding the verdict. On none of these was the court justified in entering judgment for the defendant. It was in error, therefore, when it did so.

■ The plaintiff takes the position that his evidence on causation would have been even stronger had not the trial court struck the answer to a hypothetical question put to Dr. Archambault. This question had the doctor assume, among other things, that when the plaintiff caught his foot on the roofing paper he was "precipitated to the roof." We feel that, although the manner that the plaintiff went down on the roof might appropriately be designated a fall, it could not properly be said on the evidence that the plaintiff was "precipitated to the roof." It permitted the doctor to assume that the plaintiff was thrown "headlong." This was contrary to any fair interpretation of the evidence. Used in the context it was, the word "precipitated" assumed a fact not supported by the record, and the doctor's testimony in reply to the question was therefore properly struck. The fact remains, however, that the evidence, as we have reviewed it, was sufficient to make a case for the jury and it was error for the trial court to enter judgment for the defendant notwithstanding the verdict for the reasons already stated.

■■ There remains for disposition the matter of a new trial on the question of damages only. Since *Parizo* v. *Wilson,* 101 Vt. 514, 144 A. 856, it has never been doubted but that the court has the power to do this. However, it is only in the exercise of a sound discretion that the court will take such action. *Farr* v. *Fisher,* 107 Vt. 331,334, 178 A. 883, 98 A.L.R. 926. In this case both the plaintiff and defendant agree that, if the plaintiff is entitled to recover at all, the verdict was grossly inadequate. It barely covered the amount which the

plaintiff was out-of-pocket for medical services. The jury allowed the plaintiff nothing for permanent disability nor for pain and suffering. There can be no question on the evidence but that the plaintiff did suffer great pain for an extended period. We can account for the gross inadequacy of the damages, in view of the evidence on this subject, only by inferring that the jury lacked a genuine conviction on the question of liability and reached the verdict it did as a result of compromise and that thereby the whole verdict was tainted. In such circumstances a new trial upon all issues will be ordered. *Parizo* v. *Wilson,* 101 Vt. 514, 522, 144 A. 856. We have had no occasion to recite the evidence favoring the defendant. It is enough to say that it raised a serious question as to the plaintiff's credibility and good faith. If the jury were genuinely satisfied on these matters, its verdict could not have been in the small amount that it was.

It is to be noted that the trial court, by entering judgment for defendant, never had to face the question underlying the plaintiff's motion for a new trial on damages only. Its ruling precluded it from doing so. We approach the subject, therefore, at least with a free hand since the action of the court below on this subject was unmistakeably *pro forma.* Beyond that, however, we think that, all in all, the record tends to indicate that the trial court may have mistakenly thought it could enter judgment for the defendent where the verdict was against the weight of evidence. Certainly, if the trial court could not go as far as it wanted, it would go as far as it could, *i.e.,* order a new trial on all issues instead of on the question of damages alone. Viewed from any point of view we reach the same conclusion.

*Judgment reversed; a new trial on all issues granted. Motion for reargument denied.*