### John E. Popper
### v.
### Walter M. Levy and Paul A. Franklin

[ 214 A.2d 653 ]

June Term, 1965

Present: **Holden, C. J., Shangraw, Barney, Smith and Keyser, J. J.**

Opinion Filed October 5, 1965

Recalled and Refiled November 10, 1965

*Fitts and Olson* for plaintiff.

*Chapman and MacBride* for defendants.

**Keyser, J.** On September 5, 1963, the plaintiff entered into a written contract with the defendants to purchase about seventy acres of land with buildings thereon, making a down payment of $1,600 on the purchase price of $16,000. On the closing date in November, a disagreement arose between the parties which terminated in the nonperformance of the contract. Each party claimed the other was at fault for the breach of the contract.

The plaintiff brought suit to recover his down payment and expenses caused by the breach. A trial by jury resulted in a verdict for the plaintiff and an appeal by the defendants. The grounds of appeal are on the denial of defendants' motions for a directed verdict and for judgment notwithstanding the verdict.

In considering defendants' motions for a directed verdict the evidence must be taken in the light most favorable to the prevailing party and the effect of modifying evidence is to be excluded. *Smith* v. *Blow and Cote, Inc.,* 124 Vt. 64, 66, 196 A.2d 489.

Thus considered, the jury could have reasonably found the following facts. On September 5, 1963, the parties entered into a written contract for the purchase by plaintiff of certain real estate owned by the defendants in Halifax, Vermont. The contract also provided that four articles of household goods were included without additional charge but "no other furniture or tools" were included in the sale. The price of the property was $16,000 of which plaintiff paid $1,600 as a down payment. The defendants agreed to convey the property by warranty deed "free and clear of all liens and encumbrances."

The contract was sent to plaintiff for his signature. It was accompanied by a survey map but it was not made a part of the written contract.

The water supply to the property comes from two separate springs. One called the east spring, is located about 300 feet from the house. Pipe laid in the ground conducts the water in the spring to a pump and pressure tank in the basement. This spring has gone dry in two or

three seasons since 1960. When this occurs, the defendants used the west spring located about 1500 feet from the house.

The water from the west spring when used is conveyed to the house by gravity through a plastic pipe laid on the ground from this spring into a 200 gallon storage tank in the basement and thence pumped into the house system.

During the negotiations defendant Levy showed the water system in the basement to plaintiff including the auxiliary system and explained it to him. The auxiliary system was then connected because the east spring was dry. At that time defendant Levy told plaintiff both the pipe and tank went with the house. Levy also made this same statement at other times to plaintiff, his wife and mother-in-law. The auxiliary water system was still being used at the house on the day the parties met to close their transaction.

The plaintiff was financing the purchase of the property partly by note and mortgage. On November 1, 1963, plaintiff, joined by his wife, executed a note for $10,000 to Greenfield Co-Operative Bank of Greenfield, Massachusetts. This note was secured by a mortgage covering the property described in the contract.

Either the same day, or the next morning, the parties met at the house of defendants' attorney in Halifax to close the transaction. An attorney from Greenfield was present representing both the bank and the plaintiff. He and plaintiff possessed the necessary funds with which to complete the purchase.

Just as the parties were ready to close the transaction and make final adjustments, defendant Levy said that that part of the auxiliary water supply consisting of the plastic pipe and tank did not go with the house and he was taking it with him. He offered to sell it to the plaintiff for $100. Up to that time, there had been no question about these two items going with the property and no statement had been made to this effect by defendant to plaintiff.

This would have left the house without water. The bank was immediately advised of this situation by their attorney. He was instructed not to put through the loan or advance any money unless the water supply went with the premises. This left the plaintiff without sufficient funds to purchase the property. Defendant Levy refused to include the pipe and tank used in connection with the auxiliary water system and this broke off all further dealings between the parties.

In May 1964 the defendants sold part of the property in question to two different parties for a few hundred dollars more in price than

the $16,000 which the plaintiff was to pay for the entire property.

The defendants first claim the trial court erred by denying their motion for a directed verdict. Defendants urge they had not disabled themselves from performing according to the contract by removing the water system as charged in plaintiff's writ. As a further ground of their motion defendants contend the evidence of a prior oral agreement to convey the auxiliary water system was incompetent and inadmissible.

After verdict every presumption is to be made in favor of the sufficiency of the pleadings. *Johnson* v. *Hardware Mutual Casualty Co.,* 109 Vt. 481, 499, 1 A.2d 817; *Newton* v. *Brown,* 49 Vt. 16, 18.

Plaintiff's attorney stated in his opening statement to the jury that "Mr. Popper is asking for the return of the money, the cost he has been to and lost profits by Mr. Levy trying to change the deal, not going through with the deal originally made. That's all we seek."

Defendants filed a counterclaim asking for damages because of the refusal of plaintiff to accept the deed to the property.

The record shows trial proceeded on the theory of whether or not plaintiff was entitled to recover according to his statement to the jury.

The overall meaning of the language in plaintiff's complaint was that he was seeking to recover his down payment and expenses. The case proceeded throughout the trial on this basis, adopted by both the court and the parties. See *Roberts* v. *Gray,* 119 Vt. 153, 156, 122 A.2d 855; *Perkins* v. *Vt. Hydro-Electric Co.,* 106 Vt. 367, 417, 418, 177 Atl. 631.

The presence or absence of the pipe and tank on the premises was not the controlling factor in the case. The critical fact was whether the defendants unjustifiably refused to perform their part of the agreement in withholding the water system and thereby rendering it impossible for the plaintiff to fulfill his obligation. The issue was whether or not plaintiff was entitled to recover his deposit and expenses. It is to be noted that the contract contained no forfeiture clause or provision relating to liquidated damages.

On the record presented, whatever variance existed between the pleading and proof is more of a technical nature than of substance. The defendants have failed to establish, as they must, just how their rights have been prejudiced in this respect. *Lewis* v. *Gagne,* 123 Vt. 217, 220, 185 A.2d 468. See also *Jaqueth* v. *Guilford School District,* 123 Vt. 382, 383, 189 A.2d. 558, and *Senecal* v. *Bleau,* 108 Vt. 486,

495, 189 Atl. 139 where the court held that proof need not correspond word for word with the pleadings.

Moreover, plaintiff's allegation was fairly supported by the evidence. It was not necessary for him to show an actual or physical removal of the pipe and tank. The pleading is sufficiently satisfied by the evidence of defendants' flat refusal at closing to include the auxiliary water system which plaintiff had been led to believe was sold to him with the house and Levy's statement that the only way he would leave it was if he was paid for it. The evidence clearly shows that any failure of the plaintiff to perform was due to this attitude of the defendant.

■ Such action by defendants amounted to a positive refusal to perform and, plaintiff being ready to perform himself, put the defendants in default. See *Carvage* v. *Stowell*, 115 Vt. 187, 192, 193, 55 A.2d 188. A refusal to perform excuses performance or tender thereof by the other party. *Hambleton* v. *U. Aja Granite Co.*, 96 Vt. 199, 203, 118 Atl. 878.

The other ground of defendants' motion is that the evidence of a prior oral agreement to convey the auxiliary water system was incompetent and inadmissible.

Plaintiff's evidence clearly tended to show that during the negotiations the parties discussed the water situation and defendant Levy told plaintiff on several occasions that the auxiliary water system "went with the house." After these representations, the written contract was executed.

Also, there was evidence that the auxiliary system was connected from the spring into the house and operating when the plaintiff was in the basement before the contract was signed. Both parties testified it was connected and was the sole water supply to the house on the date of closing.

*Roof, Trustee* v. *Jerd,* 102 Vt. 129 is a case closely similar factually to this case and also involved the parol evidence rule. The facts in that case show that the defendant bought two lots in an undeveloped tract near Sarasota, Florida, paying one-half down and giving notes for the balance. Plaintiff promised and agreed if Jerd bought the lots, he would develop the tract with roads, etc., but never did. Suit was brought upon the notes and defendant recovered damages in offset caused by the failure to make the improvements specified.

■ The court said at pp. 131-132:

"Sure it is, that the rule does not exclude parol proof of a prior

or contemporaneous oral contract that is independent of, collateral to, and not inconsistent with the written contract, though it relates to the same general subject-matter and grows out of the same transaction. . . . Our own cases, as will hereinafter appear, have been very liberal in construing the rule."

The court held at page 132:

"That the agreement relied upon by this defendant belongs to the class of contracts to which the rule does not apply, we have no doubt. It does not in any way affect the written contract or impair its force or effect. It merely shows an undertaking on the part of the plaintiff not shown by the writing, but collateral to it and independent of it. The bond between the two is that the contract of purchase was the consideration of the parol promise only."

The defendants argue that the exception to the rule is not applicable here because the contract is not silent on the subject of water supply or personal property. We do not adopt this view of the contract. In fact, the evidence did not tend to contradict or vary the written agreement.

■ There is no provision in the written agreement relating to the auxiliary water system in dispute here. The contract only provides that the plaintiff "will have unrestricted right to the use of the two springs on the property" with a license to be given defendant Levy for use of the west spring. Moreover, it has been defendants' position all along that the 1500 feet of plastic pipe and the storage tank was not a part of the water system.

Paragraph 5 of the agreement provided that four items of household goods were "included in the sale without additional charge" and that "no other furniture or tools are included in the sale." The defendants urge that this last clause is to be interpreted to mean "no other personal property" thereby excluding the pipe and tank.

This construction is unreasonable. The words "furniture" and "tools" are not that inclusive. Plastic pipe and a 200-gallon storage tank are not within their definition. Defendants' statement that paragraph 5 specified that the list of items sold is exclusive is erroneous. The pipe and tank are not within this exclusion clause of the contract. There is no provision of the contract which deals with these two items as personal property or mentions the auxiliary water system as such in any manner.

■ Furthermore, the parol evidence rule applies only where the enforcement of an obligation created by the writing is substantially the

cause of action. And also, the exception is applicable where the parties to the litigation and to the writing are the same. *Lunnie* v. *Gadapee,* 116 Vt. 261, 263, 73 A.2d 312. We also point out that the plaintiff here is not suing on the contract, rather he seeks restitution to recover money paid under a contract of purchase which has been repudiated by the defendants.

The facts in this case show the oral agreement is consistent with, independent of, and collateral to, the written contract and could be proved by parol. Consideration for the promise was included in the contract of purchase. Defendants' contention that the parol evidence rule applies is without merit. *Strout* v. *Wooster,* 118 Vt. 66, 69, 99 A.2d 689; *Roof, Trustee* v. *Jerd,* supra; *Noel* v. *Kessler,* 252 Pa. 244, 97 Atl. 446.

The court properly overruled defendants' motion for a directed verdict.

The defendants also excepted to the charge where the court in substance instructed the jury that the issue was whether in the negotiations it was agreed by the parties that the auxiliary water system should go with the sale price of $16,000. In view of what we have said, this exception is unavailing.

The defendants urge it was error for the court to deny its motion for judgment notwithstanding the verdict.

The defendants moved that the verdict be set aside "as being against the evidence" and "against the weight of the evidence" and that judgment be entered in their favor notwithstanding the verdict.

As applied to the evidence, a motion for judgment notwithstanding the verdict is tantamount to a motion for a directed verdict and is to be passed upon in the same way. *Sawyer* v. *Ewen,* 122 Vt. 320, 322, 173 A.2d 549; *Campbell* v. *Beede,* 124 Vt. 434, 435, 207 A.2d 236.

In the Sawyer case the court said at p. 322:

"This (weight of the evidence) is not a proper ground upon which a court may enter a judgment notwithstanding the verdict since it is addressed to the trial court's discretion. Judgments are not entered as a matter of discretion."

However, a review of the evidence clearly demonstrates that there were controverted questions of fact presented for resolution by the jury. The evidence, fairly considered in the light most favorable to the plaintiff, does not show that plaintiff has no cause of action, as it must do, to entitle defendants to a judgment though the general verdict is

against them. *Johnson v. Hardware Mutual Casualty Co.,* supra, at p. 499.

One ground of the motion briefed relates to that portion of the charge concerning damages. The exception is to the instruction to the jury where the court said, in substance, that even if they should find there was no agreement to sell the auxiliary water system and the plaintiff was not justified in rescinding the contract, the jury, nevertheless, could award the plaintiff some portion or all, of his $1,600 deposit.

Defendants' argument is based upon the assumption that the plaintiff, without justification, chose to rescind the contract. This assumption is overridden by the jury verdict that the plaintiff recover his deposit in full and expenses. The verdict clearly indicates a finding by the jury that the agreement was made as plaintiff claimed and that nonperformance was due to defendants' conduct and default and not by any refusal to perform by the plaintiff.

■ Where a party rescinds or repudiates a contract by rendering performance impossible, he is liable for any deposit which he has received from the intended purchaser. *Dupee v. Haynes Bros., Inc.,* 116 Vt. 371, 372, 72 A. 2d 546.

■ As shown by the record, the defendants sold less of the real estate plaintiff was to acquire for a price somewhat more than he was to pay defendants for the entire property. Ostensibly, for this reason the defendants abandoned their counterclaim for damages because actually they had profited rather than lost by their refusal to sell to the plaintiff. Under this situation it would not only be highly inequitable for the defendants to retain the down payment but also result in their unjust enrichment. Recovery under the doctrine of unjust enrichment is, we think, permitted on the facts shown in this case. See 92 C.J.S., Vendor & Purchaser, sec. 552, p. 561, N 69; sec. 554 (a), p. 569 and cases there cited.

Moreover, even adopting defendants' argument on this exception, the verdict rendered the claimed defect in the charge harmless and immaterial by denying any claim of damages for the defendants. *Parizo v. Wilson,* 101 Vt. 514, 144 Atl. 856.

Defendants' exception to the charge is unavailing since prejudicial error is not shown as it must be. *Jaqueth v. Guilford School District,* supra.

Defendants' brief recites three reasons why the plaintiff was not en-

titled to recover any amount. We have considered all questions raised and are satisfied that there is no reversible error.

*Judgment affirmed. Motion to Reargue Denied. Let full entry go down.*

NOTE: Upon motion to reargue a correction which defendants conceded was trifling was made in the opinion filed.