## Louis Y. Gregoire v. Insurance Company of North America and National Surety Company

[261 A.2d 25]

No. 74-68

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed December 2, 1969

Reargument Denied December 18, 1969

*Eric A. Schuppin,* Essex Junction, for Plaintiff.

*McNamara, Fitzpatrick & Sylvester,* Burlington, for Insurance Company of North America.

*Ryan, Smith & Carbine,* Rutland, for National Surety Company.

**Keyser, J.** The plaintiff brought suit against the defendant to recover the cost of certain repairs to his 1961 International ten-wheel dump truck. The truck was damaged by upset while dumping its load. Defendant Insurance Company of North America (INA) was plaintiff's insurer and at its option under its policy took over and assumed the sole responsibility of having the truck repaired rather than paying the plaintiff for his damage. The plaintiff claims the defendant INA returned the truck to him defectively repaired. When the plaintiff next used his truck with a heavy load, a second upset occurred.

The plaintiff seeks to recover from INA the damage resulting from this second upset which, he says, was caused by the faulty repair of the truck by the company. The defendant claims it has a release from the plaintiff which protects it from further liability.

Trial was by jury resulting in a verdict for the plaintiff against defendant INA. Judgment was entered on the verdict and the defendant appealed. The court granted a motion by defendant National Surety Company for a directed verdict and it is not a party to this appeal.

The main contention advanced by the plaintiff which controls the disposition of this case is whether the parol evidence rule applies to this case to render legally ineffective any testimony of an oral assurance or guarantee alleged to have been made prior to or simultaneously with the execution of a release.

Viewing the evidence in the light most favorable to the prevailing party as we must, the following facts appear. On September 11, 1964, the plaintiff's dump truck was insured against loss by collision and upset by defendant INA. On that date, the truck sustained considerable damage when it overturned while dumping a load of gravel. The parts damaged were the hydraulic lift or telescopic dump body hoist, dump body, subframe, main frame or chassis, springs, fenders, mirrors and battery. This damage was covered by plaintiff's insurance policy with INA.

The plaintiff reported the accident which resulted in the Graham Adjustment Agency being employed by the defendant to act for it in relation to plaintiff's claim. Another adjusting agency represented by a Mr. Redfield also acted on behalf of the defendant.

The policy of insurance provides that the company will pay for direct and accidental damage to the automobile caused by upset less the deductible amount stated in the policy. The policy also provided that "The company may pay for the loss in money or may repair or replace the automobile or such part thereof, . . . ."

The insurance company elected to repair the truck and arrangements were made by adjuster Graham with Heil Northeast to repair some of the damaged parts, including the hydraulic lift, dump body and dump body subframe. Other arrangements were made by the adjuster with a company in Plattsburg, New York, to repair other parts of the truck including the chassis. Plaintiff was told "that they would repair it and guarantee it." The repair to the truck was at all times under the sole control and supervision of the insurance company.

The plaintiff testified that a representative of Heil Northeast "Said it would be cheaper to take the dump body and junk it and put on a new one, or repair the subframe and put a new body on and, at the time, the adjuster recommended that they

would send it to New York and get it fixed and repair the body and it would be satisfactory." However, by direction of the adjuster the dump body was repaired and reinstalled on the truck. The company was asked to repair the hoist with new parts but this was refused.

After the truck was repaired the plaintiff met the adjuster, Mr. Redfield, at the office of Heil Northeast in Williston, Vermont, during the first part of the winter to get delivery of his truck. On examination of the truck the plaintiff discovered the left side of the dump body was raised about four inches with a kink in the side. The plaintiff objected to the adjuster about the faulty repairs and was told that when the truck was used for heavy loads it would straighten out and would go back down. The plaintiff suggested that they take the truck to a pit and load it to try it out but he was told that it wasn't necessary. Plaintiff testified that "They guaranteed me that it would straighten out when we put on a load."

At that time the adjuster presented a paper to the plaintiff to sign. Plaintiff told the adjuster that he didn't want to sign anything on that kind of a deal where the dump body was still tipped up on one side. The adjuster told him he had to have it so plaintiff signed it but before doing so he was told that "they would guarantee this." Plaintiff testified that when he accepted the truck, "he (adjuster) said they would guarantee it." He further testified that "the only reason I signed it was he was guaranteeing it" and that "I accepted his representations."

The plaintiff had nothing to do with the amount of the negotiation or settlement of the claim of Heil Northeast. The amount paid by INA to Heil Northeast for the repairs was $1770.74 less $100. deductible. This was by check payable jointly to the plaintiff and Heil Northeast. Plaintiff endorsed the check and it was then handed directly to the repair agency, Heil Northeast, in payment of its bill.

During the ensuing winter the plaintiff used his truck about three or four times for light snow removal. On May 8, 1965, he used the truck for hauling a heavy load the first time after the repairs had been made to it by INA. As the dump body was being hoisted, it went out of balance, twisting the telescopic hoist and breaking it where it had previously been broken. This caused the truck to tip over on its side resulting

in further damage. The evidence shows a causal connection between the repair job assumed by INA and the second upset.

The proof of loss statement contains the following:

> "Amount Claimed Insured hereby claims of this Company and will accept from this Company in full release and satisfaction in compromise settlement of all claims under this policy the sum of $1670.74."

The defendant argues that this constitutes a release whose terms cannot be altered, varied or contradicted by the representations, assurances and guarantee which the evidence shows were given to the plaintiff.

The document referred to by defendant as a release is a form furnished by it for use by plaintiff to submit his claim or proof of loss. It sets forth facts as to the insured, his policy, the accident and specifies what his claim is and what he will accept to satisfy it. The intended use of the form is not as a release. The language and terminology used does not indicate that it is a release, either express or implied. The defendant appears to be reaching to take advantage of incidental language printed in its form for a purpose not intended to be what is claimed for it.

The amount shown as plaintiff's claim is nothing more or less than the bill incurred by the defendant for the truck repairs. The plaintiff was in nowise involved either in the repair job or in the settlement of the repair cost. The insurance company was paying its own bill for the repairs and the fact that plaintiff endorsed the check as one of the payees is of no consequence. He was only acknowledging payment to defendant's repairer, Heil Northeast.

■ We hold that the statement in the proof of loss, *supra*, does not constitute a true, absolute and total release as claimed by the defendant in its motion for a directed verdict. The attributes of a legal release are lacking. See 45 Am.Jur., Release, 678, § 7, notes 19, 20.

■ There were several occasions during the trial that the plaintiff testified as to conversations with defendant's representative concerning being told the repairs were "guaranteed" and that the dump body "would straighten out." All of this

evidence came into the case without challenge either by objection or motion to strike. Consequently, the evidence was properly for consideration by the jury. *L'Ecuyer* v. *State Highway Board*, 124 Vt. 462, 466, 207 A.2d 260.

■ The defendant further argued on its motion for a directed verdict that the court disregard "any evidence indicating any type of guarantee." The testimony referred to having been introduced without objection which thereby waived the right to object, the defendant cannot at some subsequent stage of the trial insist on its exclusion. *Towle* v. *St. Albans Pub. Co.*, 122 Vt. 134, 141, 165 A.2d 363.

■■ But even if the parol evidence had been challenged, the defendant having pleaded the "release" as a bar to the action, evidence of the facts and circumstances surrounding its execution was admissible on the questions of plaintiff's intent and his conditional acceptance of the truck. Evidence that plaintiff was induced to act as he did because of the statements and representations was relevant. Even though the proof of loss be treated as if it included a release, the undertaking of the defendant at the time it was given was collateral to the writing and was properly admitted in evidence. *Popper* v. *Levy*, 125 Vt. 281, 285, 214 A.2d 653; *Roof, Trustee* v. *Jerd*, 102 Vt. 129, 131, 146 A. 250; *Wood* v. *Rutland & Addison Mutual Fire Insurance Co.*, 31 Vt. 552, 564.

If the statement in the proof of loss, *supra,* is to be taken as a promise by plaintiff to execute a release, it was never acted upon by the insurance company. It made no request of the plaintiff for a release and, of course, there was no refusal by him to deliver one. It was held in *McNutt* v. *Loney*, 153 Pa. 281, 25 A. 1088, 1089, that where a creditor promised to sign a release of his claim, but afterwards refused to execute it, the debtor is not released from liability.

■ When the defendant INA elected to repair the truck it was under the duty to have complete and adequate repairs made so that the truck would be restored to its condition prior to the accident. Plaintiff was told "they would repair it and guarantee it." And at the time plaintiff took delivery of his truck, he was given not only assurances that the dump

body would straighten out but also "a guarantee" as to the work performed.

■ ■ It is noted that the allegations in plaintiff's complaint are in some variance with the facts proved by the evidence on which liability is founded. Briefly stated, the case was tried below on the following issues: that INA by its election made the repairs to plaintiff's truck caused by the upset in September, 1964; that the repairs were faulty; that plaintiff signed a paper claimed by INA to be a release; that plaintiff accepted the truck under protest and only upon the agreement of the insurance company that the repairs were "guaranteed"; that the plaintiff's truck sustained a second upset in May 1965; and that plaintiff claimed this resulted because of the faulty and inadequate repairs made under the sole control of the insurance company. The record clearly indicates that the issues were broadened to be as just outlined. The trial court proceeded upon this theory of the case and, being acquiesced in by the court and counsel, it became the law of the case. *Merrill* v. *Reed,* 123 Vt. 248, 252, 185 A.2d 737. The issues made by the pleadings may be limited or enlarged by the conduct or agreement of counsel for the parties. *Vaillancourt* v. *Dutton,* 115 Vt. 36, 37, 50 A.2d 762.

Defendant's exceptions to the denial by the trial court of its motions for a directed verdict, judgment notwithstanding the verdict and for a new trial are overruled.

The defendant also asserts the trial court erred in charging the jury that they could base a verdict on a finding that appellant "guaranteed" the repairs. It claims the court disregarded the parol evidence rule. From what we have said in our opinion, this exception is without merit.

*Judgment affirmed.*

NOTE: The defendant filed a motion to reargue. The opinion was recalled and amended but there is no change in the result.