### Susan V. Aldrich v. Lincoln Land Corporation, Robert H. Baldwin, et al.

[294 A.2d 853]

No. 152-71

Present: Shangraw, C.J., Barney, Keyser and Daley, JJ. and Gibson, Supr. J.

Opinion Filed June 6, 1972

Motion for Reargument Denied September 14, 1972

*Fitts and Olson,* Brattleboro, for Plaintiff.

*Thomas P. Salmon, Esq.,* Bellows Falls, for Defendants.

**Barney, J.** The plaintiff, Susan V. Aldrich, arranged to sell her 500 acre farm to the defendants, Lincoln Land Corporation and Robert H. Baldwin. The transaction took the form of a lease-purchase agreement in which these defendants contracted to lease the premises for four years from August 1967, and then, conditioned on the making of the required payments, in August, 1971, a deed was to be delivered in exchange for the agreed balance.

In July of the third year of rental, payments became delinquent and, in December a petition for declaratory judgment was brought. Out of this litigation came an "Interim Decree of Foreclosure." This decree takes the form of an order of foreclosure as in cases of mortgages. The legal title in this lessor is viewed as a security interest held for the payment of the purchase money due, with equitable title in the lessees. *Weston* v. *Landgrove,* 53 Vt. 375, 378 (1881). Given a breach of the contractual provisions, foreclosure is the remedy. However, this interim decree provided that the defendants in default could salvage their bargain and preserve their right of eventual purchase by compliance with the terms of the decree. It required the defendants to make rental payments of a certain amount on or before June 22, 1971, and on or before July 22, 1971, with the balance of the transaction to be completed on the 13th of August, 1971, by payment of the agreed balance in full. As to each of the payments of June and July, the defendants were given a thirty-day grace period to make payment, in the event of default on the due date. At the end of that time existing default foreclosed the interest of the defendants forthwith. This whole decree was based upon the terms of a stipulation entered into by the plaintiff and these defendants.

A default did occur on the June, 1971, payment. It came about in this way: The June 22, 1971, payment was not made on that date. The defendant Baldwin sent to his attorney a

certain check number 152 for the amount of the June 22, 1971, payment, drawn on the Pacific National Bank of Nantucket, Massachusetts. At that time he did not have sufficient funds to cover the check in that bank. On July 1, this check number 152 was mailed to the attorneys for the plaintiff, received by them on July 2, 1971, and deposited. Two weeks later these attorneys were notified that the check had been returned for insufficient funds. It was the evidence of the defendant Baldwin that he knew at the time he drew check number 152 that he did not have money enough in the account to have the check honored, but that he had instructed his wife to transfer the necessary funds from an account of hers in the Harvard Trust Company. Why this was not accomplished is not explained.

On July 26, defendant Baldwin's attorney notified him of the return of his check for insufficient funds. Two days later the defendant drew a second check on the same bank in payment of the June 22 installment and in replacement of check number 152. The thirty-day grace period had, of course, already expired. This check was delivered to the attorneys for the plaintiff on August 2, 1971. Although the findings do not say so, the evidence reveals that this check, along with another of like amount in payment of the July installment, were rejected by the plaintiff, through her attorneys, and matters moved on to a hearing on foreclosure. The defendant Baldwin, according to the findings, had made arrangements to finance the payment of the full balance under the interim decree provisions. No tender of that balance, due on August 13, 1971, was ever made.

Once again, proceedings looking to foreclosure were had. The lower court found the facts to be, in substance, as already recited, and foreclosed out the interest of the defendants appealing here. As provided in the interim decree, their interests were foreclosed forthwith without provision for further redemption. This appeal followed.

The judgment order is attacked as amounting to a forfeiture, and contrary to the principles of equitable relief. This is, indeed, a concern of equitable jurisprudence. *Braune* v. *Rochester*, 126 Vt. 527, 533, 237 A.2d 117 (1967). But since every foreclosure has as an intrinsic part some sacrifice

of value or interest, something in the nature of loss or forfeiture, about it, there must be an overriding concern or distinction that supports this kind of remedy, itself equitable in nature. It seems clear that the right of redemption itself is the device that removes a foreclosure from the condemnation of a forfeiture.

■ ■ The right attaches to any transaction involving a mortgage. *Earle's Admr.* v. *Blanchard,* 85 Vt. 288, 293–94, 81 A. 913 (1911). It operates to postpone the enforcement of the lien, and, when authorized, may be extended on timely application. *People's Trust Co.* v. *Billado,* 108 Vt. 27, 29, 182 A. 206 (1936). But, as that case points out, it is a right of limited duration. To hold otherwise would render the lien involved valueless, and destroy its utility as security. Thus the law provided, in 1967, for authorized possession in the mortgagee upon failure to redeem according to the decree. The applicable statute, 12 V.S.A. § 4528, was amended with respect to mortgages executed on or after April 1, 1968, but the amendment merely decreased the redemption period and, moreover, was, by its terms, not applicable to mortgages antedating April 1, 1968, as this one did.

■ It seems clear that the defendants were given under the first, or interim decree, a right of redemption. Their rights under the original arrangements were then foreclosed, and the terms of their redemptive right spelled out in the stipulation upon which the first decree was based. It provided, as is usual with redemption, that failure to properly exercise that right brought about a termination of all of their right, title and interest in the property. The setting of the time and terms under which redemption can be had is a duty of the chancellor when called upon to exercise it, to be carried out with due discretion based on the pleadings, the evidence and the positions taken by the parties. *Burlington Loan Assn.* v. *Cummings,* 112 Vt. 122, 124, 22 A.2d 377 (1941). In this case the terms stand without challenge, being based upon a stipulation.

■ The responsibility for complying with the conditions of redemption is on the one seeking the exercise of the right. The intervention of circumstances outside the control

or expectation of the redemptor may excuse a minor deviation from performance as it did in *Kopper* v. *Dyer*, 59 Vt. 477, 9 A. 4 (1887). However, nonperformance of the redemption requirements for causes for which the redemptor is held chargeable, including carelessness or inadvertence, will not generate equitable relief. *Francis* v. *Parks*, 55 Vt. 80, 81 (1883). In that case the final redemption payment was missed because the redemptor mistook the date by thirty days. In the case at hand, the payment was missed because the defendant never made certain that the admittedly unfunded check given in payment was made good within the thirty-day grace period. Unless this was done, there was, in effect, no payment made, and its accomplishment was the responsibility of the defendant, and he was properly held to it.

The defendant argues that a single missed rental payment ought not to take away the benefit of the whole transaction, even though the stipulation so provided. The findings do indicate that the defendant and his associated companies had arranged the financing for the closing transaction, due August 13, 1971. This payment was never made or tendered. The issue of whether the missed rental payment might have been swept up and merged in the culminating $70,000 transaction due as final payment is not presented.

The defendant would avoid the consequence of this ultimate failure to redeem by pointing to the rejection by the plaintiff of rental payments following the expiration of the thirty-day grace period on the June payment. He cites the rule that he is not required to do a useless act, since the plaintiff obviously did not want to give the deed even if payment was tendered.

The defendants sought to raise this issue by requesting the court to find that an appearance at an August 13, 1971, closing would be an exercise in futility. There are several reasons why such a finding, for the purpose the defendants assign to it, would be improper to make in this case.

In the first place, it is the law of this jurisdiction that acceptance of a payment outside the terms of the redemption order may enlarge or reopen the right of redemption. *Trudeau* v. *Lussier*, 123 Vt. 358, 365–66, 189 A.2d 529 (1963); *Findlay* v. *Longe*, 81 Vt. 523, 529, 71 A. 829 (1909).

Since, as the defendants point out, this was a consequence the plaintiff did not want, she was bound to refuse the late rental payment, which brings up for consideration the subject of the plaintiff's "willingness" to "perform". This is not a case of a suit for breach of contract, where the complaining party's right to sue the defaulting party might be compromised by his own failure to perform, unless he can show it is excused by waiver, rejection or futility. See *Popper v. Levy and Franklin,* 125 Vt. 281, 285, 214 A.2d 653 (1965); *Hambleton v. U. Aja Granite Co.,* 96 Vt. 199, 203, 118 A. 878 (1922).

In this case performance was to be carried out in accordance with a decree of the court. If the defendants complied with the terms of the decree, they were entitled to their deed, whether the plaintiff was willing or unwilling to give it to them. If necessary, the final decree itself could have done service as the deed. Rule 70, V.R.C.P. But certainly that result could not come about, unless the defendants in fact paid or tendered to the plaintiff the total consideration for the property called for in the interim decree. This was the very act critical to the defendants' right to have title to the property. This performance, by its very nature, could not be excused. Whether, even in the light of the default in rent payment under the decree, tender of all remaining sums due, including any rental delinquencies, on or before the August 13 deadline would have compelled a decree or conveyance to the defendants need not now be decided, since it was not done.

In short, the critical finding necessary to prevent loss of the property interest by the defendants was one that declared that foreclosure occurred in spite of a timely tender, by the defendants, of the full balance due under the decree on or before August 13, 1971. Since this event admittedly did not occur, and therefore could not be found to have happened by the court, the right of redemption was lost. The defendants did not even make the attempt to comply as was done successfully in *Kopper v. Dyer, supra,* 59 Vt. 477, and unsuccessfully in *Francis v. Parks, supra,* 55 Vt. 80. The issuance of any deed or decree passing title to the defendants required the payment of the remaining money due, and this was neither done nor attempted by way of tender within the required time,

or thereafter. The right to redeem depended upon at least this much performance, which did not occur.

Confronted with that critical circumstance, the defendants' other claims in opposition to the foreclosure have no significance. If all of the requests of the defendants for findings had been complied with, a decree in their favor could not have been issued. Nor is there any substance to the claim of estoppel. The defendants fail, not because of any lack of notice of dishonor of a rental check, but because they elected to omit the essential step required to perfect their right to redeem. As has been pointed out, this step was essential to the perfection of that redemptive right, and the attitude of the plaintiff was immaterial. Far from being an exercise in futility, full and timely payment could well have compelled the conveyance. The defendants elected to stop short of that compulsion, and thereby lost their right.

*Decree affirmed.*