595 So.2d 180 (1992)
RINGLING JOINT VENTURE II, a Florida General Partnership, Appellant,
v.
The HUNTINGTON NATIONAL BANK, First Sunset Development, Inc., an Ohio Corporation, George E. Emmons, Jr., Susan Hanson, James C. Carswell, III, Robert A. Graves and Ilona Ullen, Appellees.
No. 91-02103.
District Court of Appeal of Florida, Second District.
February 21, 1992.
Rehearing Denied March 17, 1992.
*181 Charles J. Bartlett and Robin M. Orosz of Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A., Sarasota, for appellant.
A. Lamar Matthews, Jr., Steven D. Hutton and Martin Garcia of Matthews, Hutton & Eastmoore, Sarasota, for appellees.
PER CURIAM.
The plaintiff, Ringling Joint Venture II (Ringling), appeals a final summary judgment in favor of Huntington National Bank (Huntington) and others in an action to declare a deed invalid. The deed was delivered from escrow to Huntington after Ringling had defaulted on its obligations in a complex, commercial real estate transaction. Under the specific facts of this case, we affirm the trial court.
Ringling owned a parcel of real estate in Sarasota County near the historic John Ringling Towers Hotel. In 1987, the land was encumbered by three mortgages, which secured promissory notes totalling in excess of $8 million. Huntington held the third mortgage. Ringling defaulted on its obligations, and the first mortgage holder filed a foreclosure action.
In order to resolve this complex dispute, in September 1988, Huntington agreed to loan Ringling $8.6 million under revised documents which made Huntington the first mortgage holder. These new documents contain different requirements from the original loan documents and are not a mere assignment of the rights of the prior first and second mortgagees. As part of this agreement, Frederick Clayton became managing general partner of Ringling and personally executed documents including a "single loan guaranty."
Two of the documents executed were a conveyance agreement and an escrow agreement. The conveyance agreement provided for a deed in lieu of foreclosure to be held in escrow by a title insurance company. The general warranty deed was executed by Ringling and transferred the property to Huntington. The escrow *182 agreement specified that the date of the deed would be intentionally left blank. If Ringling defaulted on its obligations under either the old promissory notes that were not extinguished by this transaction or under the new promissory notes, Huntington had the right, after giving due notice, to obtain the deed from escrow. The escrow agreement gave specific authorization to the title insurance company to deliver the deed in the event of a default.
Ringling defaulted on the promissory notes in May 1990. Huntington sent notices of default to Ringling in early June, advising Ringling that it intended to exercise its rights under the conveyance and escrow agreements. On June 20, it sent a letter to the title insurance company certifying Ringling's default and directing the delivery of the deed. The deed was apparently delivered shortly thereafter.
Ringling did not attempt to enjoin the delivery of the deed. After the delivery, it filed this action seeking to invalidate the deed. Ringling has never alleged an ability to pay its obligations under the promissory notes and has never attempted to make any payment into the registry of the court. From the record, it appears that the value of the property is less than the amount owed by Ringling to Huntington. On April 30, 1991, the trial court entered a final summary judgment declining to invalidate the deed.
We emphasize that the documents to this transaction are lengthy and this opinion does not attempt to explain all the nuances of those agreements. It is significant to us that all parties were represented by counsel, the agreement arose from a pending foreclosure action, and the transaction involves commercial real estate rather than residential property.
Ringling primarily argues that the conveyance and escrow agreements, which Ringling and its lawyers helped create, are void or unlawful because they violate the doctrine against clogging the equity of redemption.[1] Under that doctrine, "[a] mortgagor cannot, by any agreement made contemporaneously with or as a part of the mortgage transaction, bind himself not to assert his right or equity of redemption... . If the conveyance is a mortgage, the right of redemption is an inseparable incident, which cannot be restrained or clogged by agreement." MacArthur v. North Palm Beach Utilities, Inc., 202 So.2d 181, 188 (Fla. 1967) (Ervin, J., dissenting) (citation omitted). See generally 37 Fla.Jur.2d Mortgages and Deeds of Trust § 111 (1982). While we recognize that the right of redemption is "a highly favored equity," Connor v. Connor, 59 Fla. 467, 52 So. 727 (1910), that should not be cut off without due process and without considerable caution, we do not believe that the right of redemption compels us to reverse the trial court's decision.
The doctrine against clogging the right of redemption does not create an absolute right. The courts have recognized that this doctrine of equity does not apply if the right is relinquished by "a subsequent agreement upon a further consideration." Stovall v. Stokes, 94 Fla. 717, 741, 115 So. 828, 837 (1928) (quoting Skeels v. Blanchard, 85 Vt. 288, 81 A. 913 (1911). Moreover, as the supreme court stated in MacArthur:
The doctrine against clogging the equity of redemption of a mortgage estate is an old English doctrine brought forward in this Country to prevent lenders taking an inequitable advantage of distraught borrowers. The doctrine would prevent the mortgagee from taking through any trick, scheme or contrivance the equity of redemption from the borrower.
202 So.2d at 185-86
Technically, Ringling may be correct that the conveyance agreement is not a "subsequent agreement" because it was created in conjunction with new mortgage documents. Nevertheless, it is an agreement subsequent to the promissory notes and mortgages involved in the earlier foreclosure *183 proceeding. It is clear that this agreement was given to avoid foreclosure and that Ringling received valuable new consideration to relinquish its right of redemption. If we examine the underlying policy for the doctrine against clogging the right of redemption, it is obvious that this agreement was intended to assist Ringling at the time of the earlier foreclosure and was not an unfair scheme to take Ringling's equity in the property or its right of redemption. As a result, we conclude that the trial court did not err in its ruling.
Having affirmed the trial court, we emphasize that the agreements used in this case could easily result in abuse or inequity in another case under other facts. Thus, our decision should not be interpreted as a general approval for the use of such documents in resolving other foreclosure proceedings. Such arrangements should be carefully scrutinized to assure that they do not violate the favored right of redemption. Moreover, we express no opinion on Huntington's right to seek a deficiency on the promissory notes or its ability to seek recovery under Mr. Clayton's personal guaranty. It is entirely possible that the decision to invoke the conveyance agreement could be a decision precluding alternative remedies under the mortgage and guaranty.
Affirmed.
CAMPBELL, A.C.J., and LEHAN and ALTENBERND, JJ., concur.
NOTES
[1] Ringling argues that this transaction creates a mortgage. Huntington maintains that it is a distinct absolute conveyance. For purposes of this opinion, we assume without deciding that the transaction does involve a mortgage and, thus, invokes the doctrine against clogging the right of redemption.