# Third District Court of Appeal

## State of Florida

Opinion filed May 15, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-0395
Lower Tribunal No. 22-7882
_____

**Safe Harbor Equity Distressed Debt Fund 3, L.P., et al.,**
Appellants/Cross-Appellees,

vs.

**9775 Dixie LLC,**
Appellee/Cross-Appellant.


An Appeal from the Circuit Court for Miami-Dade County, Alan Fine, Judge.

Agentis PLLC, and Christopher B. Spuches, for appellants/cross-appellees.

Wells & Wells, P.A., and Diane Noller Wells, for appellee/cross-appellant.


Before SCALES, GORDO, and BOKOR, JJ.

SCALES, J.

In this commercial foreclosure case, the successor lender, Safe Harbor Equity Distressed Debt Fund 2, L.P. ("Safe Harbor"), appeals that portion of the trial court's February 23, 2023 final foreclosure judgment that denied its specific performance claim, and the borrower, 9775 Dixie LLC ("9775 Dixie"), cross-appeals those portions of the final judgment awarding Safe Harbor default interest. We affirm the final foreclosure judgment in all respects because (i) the trial court did not reversibly err by denying Safe Harbor's specific performance claim, and (ii) upon its execution of the forbearance agreement, 9775 Dixie stipulated to Safe Harbor's damages in the event of its default under the forbearance agreement.

## I.    Relevant Background

In 2021, 9775 Dixie defaulted under a promissory note that was secured by a mortgage encumbering 9775 Dixie's real property located in Miami-Dade County. On November 5, 2021, Safe Harbor, which had acquired the 9775 Dixie note and mortgage, accelerated all amounts due under the note and notified 9775 Dixie of the default and acceleration. In January 2022, without Safe Harbor filing suit against 9775 Dixie, the parties entered into a Settlement and Forbearance Agreement (the "Agreement"). Pursuant to the terms of the Agreement, Safe Harbor agreed not to foreclose on the note and mortgage so long as 9775 Dixie (i) stipulated to the amount

2

that was past due under the note and mortgage, and (ii) made timely, agreed-upon, interest-only payments to Safe Harbor for two years, after which 9775 Dixie was required to make a balloon payment to satisfy the indebtedness to which 9775 Dixie stipulated in the Agreement.

The Agreement contained default remedy provisions that are relevant to this appeal. First, the Agreement required 9775 Dixie to execute the deed in lieu of foreclosure that Safe Harbor had prepared and that was attached to the Agreement as an exhibit. The Agreement required that Safe Harbor hold this executed deed in escrow but authorized Safe Harbor to record the deed in the event of a default under the Agreement. The Agreement expressly provided that, upon Safe Harbor's recordation of the deed, 9775 Dixie "shall be deemed to have waived and released" its statutory redemption rights. The Agreement also contained an election of remedies provision, authorizing Safe Harbor "without notice and at its sole discretion" to exercise, upon 9775 Dixie's default under the Agreement, any remedies provided by the underlying note or mortgage, including the filing of a foreclosure lawsuit.

9775 Dixie's first payment check under the Agreement bounced and was returned for insufficient funds. On February 15, 2022, Safe Harbor recorded the deed in lieu of foreclosure that 9775 Dixie presumably had executed upon 9775 Dixie's execution of the Agreement. The deed

3

provided that the underlying note and mortgage were not extinguished by the recordation of the deed and that Safe Harbor retained the right to foreclose on the property.

On March 29, 2022, 9775 Dixie's counsel, upon being made aware of the recordation of the deed, notified Safe Harbor's counsel that the deed was a forgery. Indeed, as is evident from the deed, it contains two signature blocks for the grantors' signatures, but it does not contemplate that the two grantor-signors might not be signing the document at the same time and in the same place. In fact, the form contains lines for only two witnesses and only a single notary jurat, from a notary in Buncombe County, North Carolina. 9775 Dixie's counsel's March 29th letter informed Safe Harbor that one of the alleged signors could not possibly have executed the deed because she was in Florida at all material times. 9775 Dixie's counsel's letter demanded that Safe Harbor record documents re-conveying the property to 9775 Dixie and the letter also requested Safe Harbor provide a payoff amount within twenty days.

After Safe Harbor refused to comply with the demands in the March 29th letter, 9775 Dixie initiated the instant lawsuit. 9775 Dixie's operative complaint sought to (i) compel Safe Harbor to provide it with an estoppel

letter as required by section 701.04 of the Florida Statues,[1] (ii) quiet title in the property by having the trial court invalidate the forged deed, and (iii) declare the Agreement unenforceable as unconscionable. Safe Harbor responded by denying the material allegations in 9775 Dixie's complaint and by filing counterclaims that sought to (i) specifically enforce the provisions of the Agreement by, *inter alia*, requiring 9775 Dixie to execute and deliver a valid deed in lieu of foreclosure, (ii) quantify its damages under the Agreement, and, in the alternative, (iii) enforce the underlying note and mortgage, foreclosing on the mortgage and quantifying damages under the note.

The parties filed competing summary judgment motions and, on January 27, 2023, the trial court conducted a hearing on these competing motions. Ultimately, the trial court entered the challenged February 13, 2023 final judgment that quieted title in 9775 Dixie, finding the deed to be a forgery. The judgment also denied Safe Harbor's claim for specific performance

---

[1] This statute provides in relevant part, as follows:

> Within 10 days after receipt of the written request of a mortgagor . . . or any other person lawfully authorized to act on behalf of a mortgagor . . ., the mortgagee or mortgage servicer shall send or cause to be sent an estoppel letter setting forth the unpaid balance of the loan secured by the mortgage.

§ 701.04(1)(a), Fla. Stat. (2023).

under the Agreement, but granted Safe Harbor's alternate remedy, enforcing the underlying note and mortgage and foreclosing 9775 Dixie's interest in the subject property. The trial court rejected 9775 Dixie's argument that the Agreement was unconscionable, and thus quantified the amounts due under the note based on the parties' stipulation in the Agreement. Given the valuation of the subject property,[2] the trial court in its summary judgment order found that it would be inequitable to enforce the Agreement's redemption-waiver provision. The trial court's foreclosure judgment explicitly preserves 9775 Dixie's statutory redemption right under section 45.0315 of the Florida Statutes.[3]

Neither party challenges the trial court's determination that the deed was a forgery or the trial court's resulting determination quieting title to the subject property in 9775 Dixie. Rather, Safe Harbor appeals that portion of the final judgment denying its claim to specifically enforce the Agreement's deed in lieu of foreclosure provision and granting 9775 Dixie the statutory redemption right. 9775 Dixie cross-appeals the trial court's reliance on the

---

[2] At different junctures, before and during these proceedings, the parties determined the value of the subject property and the amount of the loan indebtedness. Consistently, the value of the property was approximately double the amount of the indebtedness.

[3] This section provides in relevant part, as follows:

Agreement's damages stipulation in quantifying the amount due under the promissory note.

## II.   Analysis

### A. 9775 Dixie's Cross-Appeal[4]

We begin with 9775 Dixie's cross-appeal. The Agreement details with specificity the amounts that were due at the time the Agreement was entered into (effective January 1, 2022). The Agreement plainly and unambiguously calculates all amounts due, including, but not limited to, default interest. In the Agreement, 9775 Dixie plainly and unambiguously stipulates to the amounts outlined in the Agreement as being then due. 9775 Dixie clearly accepted the benefits of the Agreement, but it breached the Agreement by bouncing the first payment to Safe Harbor due under the terms of the

---

> At any time before the later of the filing of a certificate of sale by the clerk of the court or the time specified in the judgment, order, or decree of foreclosure, the mortgagor . . . may cure the mortgagor's indebtedness and prevent a foreclosure sale by paying the amount of moneys specified in the judgment, order, or decree of foreclosure . . . . Otherwise, there is no right of redemption.

§ 45.0315, Fla. Stat. (2023).

[4] "On appeal from an order granting final summary judgment, the standard of review is *de novo*." Chakra 5, Inc. v. City of Miami Beach, 354 So. 3d 1126, 1129 (Fla. 3d DCA 2023).

Agreement. The summary judgment record plainly evidences that the trial court did not err in relying upon the parties' stipulation in order to quantify the amount due under the note. Gunn Plumbing, Inc. v. Dania Bank, 252 So. 2d 1, 4 (Fla. 1971) ("A stipulation properly entered into and relating to a matter upon which it is appropriate to stipulate is binding upon the parties and upon the Court."). We find no error in the trial court's calculation of damages due under the promissory note; therefore, we affirm the issues on the cross-appeal.

*B. Safe Harbor's Appeal[5]*

In denying Safe Harbor's claim to specifically enforce the deed in lieu of foreclosure provisions of the Agreement, the trial court reasoned that, because the value of the property far exceeded Safe Harbor's damages, it would be inequitable to force 9775 Dixie to execute a deed in lieu of foreclosure and thus deprive 9775 Dixie of its redemption rights. The trial court further reasoned that, because foreclosure constitutes an action in equity,[6] and trial courts have broad discretion in granting or denying the

---

[5] We review a trial court's ruling on a summary judgment motion *de novo*. Perez-Gurri Corp. v. McLeod, 238 So. 3d 347, 349 (Fla. 3d DCA 2017). We review a grant or denial of specific performance for an abuse of discretion, unless it is clearly erroneous. Muñiz v. Crystal Lake Project, LLC, 947 So. 2d 464, 469 (Fla. 3d DCA 2006).

[6] See Arsali v. Chase Home Fin. LLC, 121 So. 3d 511, 517 (Fla. 2013).

remedy of specific performance, it was well within the trial court's equitable powers to deny Safe Harbor's specific enforcement claim and adjudicate Safe Harbor's alternate foreclosure count.

Safe Harbor argues that the trial court reversibly erred by not specifically enforcing the deed in lieu of foreclosure provisions of the Agreement. Relatedly, Safe Harbor argues that the trial court's enforcement of the underlying note and mortgage, rather than the Agreement's deed in lieu of foreclosure provisions, deprived Safe Harbor of the benefit of its bargain, i.e., having 9775 Dixie waive its statutory redemption rights.

As indicated above, the remedy of specific performance is within the sound judicial discretion of the trial judge and will not be disturbed on appeal unless it is clearly shown to be arbitrary or contrary to law. Muñiz, 947 So. 2d at 469. Indeed, a trial court, in determining whether to grant the remedy of specific performance, may take into consideration whether granting the remedy would be unfair or unjust. See Rybovich Boat Works, Inc. v. Atkins, 585 So. 2d 270, 272 (Fla. 1991) ("Our case law is clear that the remedy of specific performance is not a matter of right. To the contrary, the court contemplating an order of specific performance is obligated to consider whether this remedy, based on the facts of the case, would achieve an unfair or unjust result."); Castigliano v. O'Connor, 911 So. 2d 145, 148 (Fla. 3d DCA

9

2005) ("Specific performance shall only be granted when 1) the plaintiff is clearly entitled to it, 2) there is no adequate remedy at law, and 3) the judge believes that justice requires it.").

In this case, the trial court did not abuse its discretion by determining that granting specific performance to Safe Harbor would produce an inequitable result. In both its counterclaim and its summary judgment motion, Safe Harbor asserts entitlement to an *alternate* remedy of enforcement of the underlying note and mortgage. The trial court granted Safe Harbor this alternate remedy and entered a final judgment enforcing both the underlying note and foreclosing on the underlying mortgage – remedies that Safe Harbor expressly sought and pursued. We are loath to find that the trial court abused its discretion (by denying the specific performance remedy) when it granted the precise alternate relief Safe Harbor requested in both its pleadings and its summary judgment motion.

Additionally, the trial court made specific findings as to the value of the subject property in relation to Safe Harbor's damages that are not challenged on appeal. Based on these findings, the trial court determined that it would be inequitable, and that Safe Harbor would recover a windfall, if the trial court were to specifically enforce the deed in lieu of foreclosure provision of the Agreement. Under the facts and circumstances presented here, we cannot

conclude that the trial court abused its discretion by granting the alternate foreclosure relief that Safe Harbor not only sought, but that made Safe Harbor whole. See Rybovich Boat Works, Inc., 585 So. 2d at 272.[7]

---

[7] Safe Harbor argues that this case is controlled by this Court's decision in SheddF2-FL3, LLC v. Penthouse South, LLC, 314 So. 3d 403 (Fla. 3d DCA 2020. In SheddF2-FL3, we reversed the trial court's finding that the parties' forbearance agreement was unconscionable, as well as the trial court's order voiding two warranty deeds that the lender had recorded after the debtors defaulted under the terms of the forbearance agreement. Id. at 409-10. While SheddF2-FL3 bears some similarity to the instant case, it is distinguishable in two, dispositive ways. First, the lender voluntarily dismissed its foreclosure claim, "stating that it had elected, as its default remedy . . . to record the warranty deeds in lieu of foreclosure, rendering the foreclosure count moot." Id. at 407. In this case, Safe Harbor pursued foreclosure as a remedy. Second, the remedy of specific performance was not at issue in SheddF2-FL3 because, unlike in the instant case, the validity of the warranty deeds was not in question in SheddF2-FL3.

Safe Harbor also argues that two other cases compel reversal here: Rothschild Reserve International v. Silver, 830 So. 2d 224 (Fla. 4th DCA 2002) and Ringling Joint Venture II v. Huntington National Bank, 595 So. 2d 180 (Fla. 2d DCA 1992). In each of these cases – where the appellate courts upheld the lender's filing of deeds in lieu of foreclosure – the courts determined that, in the context of settling a foreclosure action, the borrower may relinquish its statutory right of redemption by entering into a settlement agreement that includes execution and delivery of a deed in lieu of foreclosure. Rothschild, 830 So. 2d at 226; Ringling, 595 So. 2d at 183. These cases are distinguishable from this instant case because in both Rothschild and Ringling, the lenders chose to settle ongoing foreclosure cases by having the borrowers execute the deeds in lieu of foreclosure – and, unlike in this case, neither of those lenders thereafter pursued foreclosure as a remedy. Rothschild, 830 So. 2d at 225-26; Ringling, 595 So. 2d at 183. Furthermore, Rothschild and Ringling did not involve the remedy of specific performance and its equitable considerations.

Finally, the Agreement's provision waiving 9775 Dixie's redemption rights was expressly conditioned upon the recordation of the deed in lieu of foreclosure. Therefore, our affirmance of the trial court's refusal to grant Safe Harbor specific performance necessarily affirms the trial court's related holding that 9775 Dixie has not forfeited, and it may exercise. its statutory redemption rights.

Affirmed.